Filed 12/10/15

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION TWO

|  |  |
|---|---|
| In re the Marriage of ANNETTE and JOSEPH EUSTICE. | |
| ANNETTE J. EUSTICE, Respondent, v. JOSEPH A. EUSTICE, Appellant. | E061140 (Super.Ct.No. IND098305) OPINION |

APPEAL from the Superior Court of Riverside County. Gregory J. Olson, Temporary Judge. (Pursuant to Cal. Const., art. VI, § 21.) Affirmed.

Law Offices of Richard S. Trugman and Richard S. Trugman for Appellant.

Richard C. Houghton for Respondent.

I

INTRODUCTION

Joseph A. Eustice appeals a default judgment disposing of reserved issues in a

marital dissolution proceeding. Joseph contends the judgment is void because it exceeds

1

the relief his former wife, Annette J. Eustice, requested in her petition for marital dissolution. Joseph also contends the trial court abused its discretion in striking his response to the dissolution petition, leading to entry of the default judgment.

This appeal raises an issue of first impression as to whether a default judgment is void for lack of notice where the marital dissolution petition requests the court to determine the property rights of the parties but does not list any property. Rather than listing assets and debts, the petition states that the parties will stipulate to division of the assets and debts and, if this does not occur, the petitioner will amend the petition. Before either of these alternatives occurred, the court struck Joseph's answer to the petition, conducted a prove-up hearing, and entered a default judgment disposing of the marital property. Prior to the court striking Joseph's answer, both parties served on each other preliminary declarations listing all known assets and debts subject to disposition.

Normally, for notice purposes, a default judgment cannot dispose of property which has not been listed in the marital dissolution petition or an attached property declaration. Rather than concluding, here, that the default judgment is void because it disposes of property not listed in the petition, we hold the default judgment is valid and enforceable because Joseph appeared in the proceedings by filing a response listing assets and debts subject to disposition, and Joseph received notice of the assets and debts disposed of in the default judgment by being served with the Annette's two preliminary declarations. Furthermore, any deficiency in notice was waived by Joseph's response to the petition and preliminary declaration, both of which listed the property disposed of in the default judgment. We therefore reject Joseph's contentions and affirm the judgment.

2

## II

## FACTS AND PROCEDURAL BACKGROUND

Joseph and Annette married in 1989 and separated in August 2009. Annette filed a petition for dissolution of marriage (Petition) on August 6, 2009. Annette checked the Petition box under section 4, entitled, "Separate Property," and stated: "Petitioner requests that the assets and debts listed . . . below be confirmed as separate property." Rather than listing the assets and debts, Annette stated: "Petitioner requests confirmation of all earnings and assets acquired before, during and after the date of marriage, including inherited items, and after date of separation. Petitioner is unaware of all such assets and debts, and will file a stipulation for judgment fully disposing of all assets and debts. In the event the same is not filed, petitioner will amend this petition."

Annette also checked box b in section 5 of the Petition, entitled "Declaration regarding community and quasi-community assets and debts as currently known." Box b states: "All such assets and debts are listed." Annette added: "Petitioner does not know the full extent of such assets and debts. Petitioner will file a stipulation for judgment fully disposing of all such assets and debts. In the event that the same is not filed, petitioner will amend this petition." In section 7 of the Petition, Annette stated: "**Petitioner requests** that the court grant the above relief and make . . . other orders as follows: . . . [x] Property rights be determined."

On August 28, 2009, Joseph filed a response and request for dissolution of marriage (Response). Joseph listed the following items in section 4, entitled "Separate Property": "Pre-Marital and post separation earnings, property and accumulations,"

3

"Gifts and inheritances," "Traceable interests per Family Code Sections 2580, 2581 and 2640," "1928 Victrola," and "Washington Mutual, Las Vegas account." Joseph indicated this property was his own separate property. In section 5 of his response, entitled "Declaration regarding community and quasi-community assets and debts as currently known," Joseph stated that all such assets and debts were listed in attachment 5b. Attachment 5b included a list of the following items:

"1. Residence on Calle de las Rosas, Rancho Mirage, California, subject to debt.

"2. Residence on Grey Wolf Trail in La Quinta, California, subject to debt.

"3. Household furniture and furnishings.

"4. 2004 Lexus, subject to debt.

"5. 2005 Lexus, subject to debt.

"6. Bank of America accounts.

"7. Etrade account.

"8. Ameritrade IRA account.

"9. Starwood 401k.

"10. 2008 tax refund.

"11. Miscellaneous credit card debt.

"12. Other assets and debts unknown at this time. Respondent prays leave to amend this Response when the same is ascertained or according to proof."

Joseph also stated in section 9 of his Response: "**Respondent requests** that the court grant the above relief and make . . . other orders as follows: . . . [x] Property rights be determined."

On September 1, 2009, Annette filed a motion for child support, spousal support, injunctive order, and attorney fees and costs. Annette also filed an income and expense declaration. Joseph filed a responsive declaration to Annette's motion and an income and expense declaration.

On September 9, 2009, Joseph filed a preliminary declaration of disclosure, which included (1) a completed schedule of assets and debts (form FL-142); (2) a completed income and expense declaration (form FL-150); (3) "a statement of all material facts and information regarding valuation of all assets that are community property or in which the community has an interest"; (4) "A statement of all material facts and information regarding obligations for which the community is liable"; and (5) "An accurate and complete written disclosure of any investment opportunity, business opportunity, or other income-producing opportunity . . . ."

On October 7, 2009, the trial court heard Annette's support motion. The court ordered Joseph to pay spousal and child support, and Annette's attorney fees. The parties' attorneys stipulated in court that the parties could not withdraw funds from the Ameritrade account except to pay for their son's UCLA expenses and $500 for his high school placement expenses.

**Order Joseph Produce Ameritrade Documents**

On October 26, 2009, the court filed and served on the parties "Findings and Order After Hearing," regarding the October 7, 2009 hearing (October 26, 2009 order). The October 26, 2009 order included the following property orders:

5

"1) Petitioner, Annette Eustice, is awarded exclusive use of the family residence located at . . . Calle De Las Rosas, Rancho Mirage, . . . the furnishings located there. . . .

"2) Respondent may withdraw funds from the parties' Ameritrade account to pay for attorney fees.

"3) The parties may not withdraw any funds from the Ameritrade account except to pay for UCLA expenses for the parties' adult son, and $500 for high school placement expenses for the parties' minor child, . . .

"4) Respondent shall promptly provide Petitioner with an accounting of any monies withdrawn for the UCLA expenses. Respondent shall further provide to Petitioner a copy of monthly statements for the Ameritrade account. Respondent shall also provide to Petitioner an accounting of any monies withdrawn after September 1, 2009."

On October 27, 2009, Annette filed and served on Joseph a preliminary declaration of disclosure, which included (1) a completed schedule of assets and debts (form FL-142); and (2) a completed income and expense declaration (form FL-150). Annette's schedule of assets and debts itemized all known assets and debts, including the Calle de las Rosas and Grey Wolf Trail properties, three vehicles, a checking account, an Ameritrade stock account and retirement account, and Bank of America and Chase credit card debts. The declarations were signed under penalty of perjury and served on Joseph.

In March 2011, Annette filed a motion for sanctions under Code of Civil

6

Procedure section 177.5,[1] based on Joseph's failure to comply with the October 7, 2009 court order. Annette stated in her supporting declaration that Joseph had not provided her with an accounting of the money withdrawn from the Ameritrade account or monthly statements. Annette had repeatedly requested Joseph to provide the documents.

In May 2011, Annette filed a stipulation and order regarding her motion for sanctions. The parties stipulated Joseph would on or before June 20, 2011, comply with the October 26, 2009 findings and order, requiring Joseph to provide an accounting of the Ameritrade account and documents showing withdrawals.

In April 2012, upon bifurcation, the trial court terminated the parties' marital status.

In May 2012, Annette filed a motion for modification of spousal support and request for attorney fees, costs, sanctions, and striking Joseph's Response (motion to strike). Annette stated that Joseph had provided her with only one year of monthly Ameritrade statements, through the previous summer. The statements showed Joseph had removed substantial funds from the Ameritrade account. No further statements were provided or any accounting for the money removed from the account. Annette had attended three hearings seeking court orders for production of the Ameritrade records. Joseph had still not produced any records of his withdrawals from the Ameritrade account or records showing the disposition of the money withdrawn. Annette therefore filed a motion to strike Joseph's Response and enter default judgment under section

---

[1] Unless otherwise noted, all statutory references are to the Code of Civil Procedure.

7

2023.010, subdivision (g), and section 2023.030 for disobeying the court's orders to provide discovery and for misusing the discovery process. Annette also requested monetary sanctions under section 177.5 for Joseph's violation of court orders, as an alternative remedy, to punish Joseph for failing to provide court-ordered discovery.

Annette attached to her motion to strike Joseph's Response, a current income and expense declaration stating the nature and amount of all known assets and debts. Also attached was Annette's declaration stating she had previously agreed to allow Joseph to withdraw funds from the Ameritrade account to pay for their oldest child's college expenses on the condition Joseph promptly provide Annette with an accounting of all money withdrawn from the account since their separation, and promptly provide her with all account statements received. Joseph refused to do so, as agreed and as ordered by the court, causing Annette to incur substantial attorney fees in enforcing the court-ordered production of the Ameritrade documents. Attached to Annette's declaration were two Ameritrade statements showing the funds in the Ameritrade account had decreased from approximately $111,000 in September 2009, to $35,266 as of June 2011.

**Order Striking Joseph's Response**

On June 18, 2012, the trial court heard Annette's motion to strike. The court ordered stricken Joseph's Response. On August 21, 2012, the trial court entered findings and an order after hearing, regarding the hearing on June 18, 2012. The orders included an order striking Joseph's Response pursuant to section 2023.010, subdivision (g).

On December 11, 2012, Annette filed and served on Joseph a request to enter default on the Petition and documents supporting default judgment, including a final

8

declaration of disclosure, income and expense declaration, and property declaration. On January 8, 2013, the trial court notified Annette of the court's rejection of her default prove-up documents on the ground section 19 of her supporting declaration was inconsistent. The date of marital dissolution was inconsistent with the court records. Also, the property listed in her declaration and the judgment was inconsistent with the property declarations.

**Default Prove-Up Hearing and Judgment**

On January 14, 2013, Annette filed a request to set an uncontested matter for a default judgment prove-up hearing on the Petition. The default prove-up hearing was heard on February 27, 2013.[2] Annette's attorney informed the court she had submitted every declaration and specified every known asset. The trial court acknowledged it had struck Joseph's Response on June 18, 2012, and the matter was being heard as a default prove-up. Therefore Annette was not required to serve Joseph with the prove-up packet. During the hearing, Annette's attorney explained that $700,000 was owed on the Calle de las Rosas residence, which was more than the property was worth. The court had previously ordered that Annette was permitted to remain in the home. Joseph then convinced Annette to accept transfer of title to the residence to Annette, which Annette thought the court had ordered. Annette's misunderstanding resulted in Annette, as new title holder, becoming solely responsible for the debt owed on the home. Joseph also

---

[2] The reporter's transcript indicates the hearing was on February 23, 2013, whereas the register of actions and various pleadings state the hearing was on February 27, 2013.

9

persuaded Annette to transfer to Joseph the Grey Wolf Trail property, which had $50,000 in equity.[3] After reviewing the evidence and hearing testimony from Annette, the trial court ordered that all previous orders would remain in effect and that Annette was to prepare a proposed judgment, consistent with the court's findings and orders on February 27, 2013.

In June 2013, Annette submitted to the trial court and served on Joseph a proposed findings and order after default prove-up hearing on February 27, 2013. Attached were documents entitled "Annette Eustice Property Division Reconciliation Sheet," "Asset Analysis by Annette," and "Requested Separate and Community Property Allocation," containing detailed lists of the community property assets and debts.

---

[3] Pursuant to California Rules of Court, rule 8.252 and Evidence Code sections 451, 452, and 459, Joseph requests judicial notice of grant deeds recorded on May 29, 2012, for two properties located on Grey Wolf Trail, La Quinta, California and on Calle de las Rosas, Rancho Mirage, California. Joseph states in his judicial notice request that it is unclear whether the grant deeds were presented to the trial court. Joseph asserts the grant deeds are relevant to show the trial court did not have jurisdiction to transfer both properties to Annette, when Annette had previously transferred to Joseph in May 2012 the La Quinta property as his separate property.

Joseph's request for judicial notice of the grant deeds is denied on the ground the grant deeds were not presented to the trial court: "Reviewing courts generally do not take judicial notice of evidence not presented to the trial court. Rather, normally 'when reviewing the correctness of a trial court's judgment, an appellate court will consider only matters which were part of the record at the time the judgment was entered.' [Citation.] No exceptional circumstances exist that would justify deviating from that rule, either by taking judicial notice or exercising the power to take evidence under Code of Civil Procedure section 909." (*Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 444, fn. 3.)

**Joseph's Motion to Set Aside Default**

In July 2013, Joseph filed a request to set aside default entered on February 27, 2013. Joseph argued the judgment must be set aside because Annette's Petition did not list all community property disposed of in the default judgment. The judgment was thus void because it exceeded the scope of the Petition. Annette filed a responsive declaration to Joseph's motion, stating that Joseph's default had been entered and therefore he had no standing unless the court set aside his default.

On August 19, 2013, the court filed and entered a findings and order after hearing, which attached and incorporated Annette's proposed findings and order after default prove-up hearing.

On October 28, 2013, the trial court heard Joseph's motion to set aside default. Annette's attorney objected to the trial court hearing the motion on the ground default had been entered against him in December 2012, and his motion was brought more than six months later. Therefore Joseph did not have standing to bring the motion. Joseph's attorney argued *Stein v. York* (2010) 181 Cal.App.4th 320 (*Stein*), *In re Marriage of Andresen* (1994) 28 Cal.App.4th 873 (*Andresen*), and *In re Marriage of Kahn* (2013) 215 Cal.App.4th 1113 [Fourth Dist., Div. Two] (*Kahn*) supported setting aside default on the ground there was no declaration of property filed with the Petition, and therefore under section 580, the trial court did not have jurisdiction over the property disposed of in the default judgment.

Annette's attorney argued the three cited cases were distinguishable in that they all were appeals from default judgments, whereas in the instant case, a judgment had not yet

11

been entered. There only was entry of default. In addition, the cases were factually distinguishable and Joseph had filed a responsive pleading listing all the property he wanted adjudicated. The parties also exchanged preliminary declarations and disclosures. The trial court ordered Annette to file a proposed judgment based on the allegations in the Petition and declarations served on Joseph. The court indicated that Joseph's remedy would then be to appeal the judgment as opposed to seeking relief in the trial court by means of a motion to set aside default.

On February 26, 2014, the trial court entered and filed a judgment on reserved issues and filed a notice of entry of the judgment. The judgment stated property division was ordered as set forth in the attachment to the judgment. The attachment included a list of orders dividing and distributing the following marital property listed in Annette's October 2009 preliminary declaration:

1. Calle de las Rosas residence

2. Grey Wolf Trail property

3. Household furnishings, furniture, and appliances

4. Ameritrade accounts

5. Two vehicles

6. El Paseo bank account balance

7. Two Federal Kemper Life insurance policies

Joseph filed a notice of appeal of the February 26, 2014 judgment.

III

SCOPE OF RELIEF REQUESTED

Joseph contends that because Annette's Petition did not identify specific assets and debts subject to disposition by the court, the default judgment is improper and void under section 580.  Joseph further argues that under *Stein, supra,* 181 Cal.App.4th 320, Annette's preliminary declarations did not rectify this notice defect in the Petition.

"It is a fundamental concept of due process that a judgment against a defendant cannot be entered unless he was given proper notice and an opportunity to defend. [Citations.]  California satisfies these due process requirements in default cases through section 580." (*In re Marriage of Lippel* (1990) 51 Cal.3d 1160, 1166 (*Lippel*).)  Section 580, subdivision (a), provides in part:  "The relief granted to the plaintiff, if there is no answer, cannot exceed that demanded in the complaint, . . ."  "'[T]he primary purpose of the section is to guarantee defaulting parties adequate notice of the maximum judgment that may be assessed against them.'" (*Stein, supra,* 181 Cal.App.4th at p. 325, quoting *Greenup v. Rodman* (1986) 42 Cal.3d 822, 826.)  "Section 580 'ensure[s] that a defendant who declines to contest an action . . . [is] not . . . subject[ed] . . . to open-ended liability' and operates as a limitation on the court's jurisdiction." (*Stein,* at p. 325; *Greenup,* at p. 826.)  "'The notice requirement of section 580 was designed to insure fundamental fairness.'" (*Stein,* at p. 325, quoting *Becker v. S.P.V. Construction Co.* (1980) 27 Cal.3d 489, 494.)  The limitation on default judgments under section 580 applies to marital dissolution proceedings.  That section "requires that a default judgment in a dissolution action which is greater than the amount specifically demanded in the petition be

13

considered void as beyond the court's jurisdiction. . . . [Citations.]" (*In re Marriage of Well*s (1988) 206 Cal.App.3d 1434, 1438 (*Wells*).)

Joseph relies on *Stein* for the proposition that, because the default judgment in the instant case disposes of property which was not listed in Annette's Petition, the judgment is void. In *Stein, supra,* 181 Cal.App.4th 320, a legal malpractice action, the defendant appealed a $2.65 million default judgment on the ground the judgment was void under section 580 because the complaint failed to state the amount of damages requested. The court in *Stein*, agreed and reversed the default judgment. (*Id.* at pp. 323, 327.)

As explained in *Stein*, "If a default judgment awarded against a defendant exceeds the relief demanded in the complaint [citation], or is a different form of relief than that demanded in the complaint [citation], the defendant is 'effectively denied a fair hearing . . . [citations]' [citation]. Thus, a default judgment in an amount greater than the amount demanded is void and subject to either direct or collateral attack." (*Stein, supra,* 181 Cal.App.4th at p. 326.) "Where 'no specific amount of damages is demanded, there is no adequate notice to the defendant—and a default judgment entered under those conditions is void. [Citation.]'" (*Id.* at p. 327, quoting *Janssen v. Luu, supra,* 57 Cal.App.4th at p. 279.) The *Stein* court held that because the legal malpractice complaint did not specify the amount of damages sought, the complaint could not support a default judgment in any amount and therefore the default judgment was void. (*Stein* at p. 327.)

*Stein* is distinguishable from the instant case. *Stein* is not a marital dissolution case and involves entry of default because of the defendant's refusal to file an answer to the legal malpractice complaint. In the instant case, Joseph filed a response to Annette's

14

Petition but it was stricken because Joseph refused to comply with the court's discovery order. Also, here, Annette and Joseph filed preliminary declarations and disclosure declarations listing the property subject to disposition, and the Petition provided notice of the type of relief requested.

Joseph argues that under *Stein*, the preliminary declarations did not provide adequate notice of potential liability. In *Stein*, the court rejected the plaintiff's contention that the defendant's active participation in discovery and other pretrial procedures waived the defendant's right to object to the amount of damages awarded. (*Stein, supra,* 181 Cal.App.4th at pp. 325-326.) The *Stein* court stated that, "[u]nder section 580 actual notice of the damages sought is not sufficient; due process requires 'formal notice.' . . . [C]onstructive notice of potential liability does not satisfy section 580." (*Id.* at p. 326.) This is because due process requires that defendants be told exactly what their exposure is so they can make an informed decision when deciding whether to respond to a pleading. (*Ibid.*) "The purpose of section 580 is to assure a defendant that if he does not contest the action, the judgment taken against him will not go beyond the prayer of the complaint. . . ." (*Wells, supra,* 206 Cal.App.3d at p. 1437.)

The complaint or petition is not necessarily the sole statement of relief that forms the boundaries of relief granted in a default judgment. Section 580 specifies two other plaintiff-generated documents which limit certain default judgments: a section 425.11 statement of damages in personal injury and wrongful death actions, and written notice of the exact amount of punitive damages plaintiff seeks, as required by section 425.115. A petitioner's list of assets and debts in a property declaration, preliminary declaration, and

15

disclosure declaration fulfill the same notice function in a marital dissolution as do a statement of damages and punitive damages notice, provided the declarations are served on the respondent before entry of default. We therefore treat Annette's preliminary declarations the same as a statement of damages or punitive damages notice. The Petition and Annette's declarations served on Joseph before his Response was stricken satisfied Joseph's right to notice of the relief requested and the property subject to disposition.

Family Code section 2103 indicates that a preliminary declaration serves the purpose of putting the parties on notice of the property at issue in a marital dissolution action: "In order to provide full and accurate disclosure of all assets and liabilities in which one or both parties may have an interest, each party to a proceeding for dissolution of the marriage or legal separation of the parties shall serve on the other party a preliminary declaration of disclosure under Section 2104 and a final declaration of disclosure under Section 2105, unless service of the final declaration of disclosure is waived pursuant to Section 2105 or 2110, . . ." (Fam. Code, § 2103.)

Annette was not required to serve Joseph with a final declaration because "In the case of a default judgment, the petitioner may waive the final declaration of disclosure requirements . . . and shall not be required to serve a final declaration of disclosure on the respondent nor receive a final declaration of disclosure from the respondent. However, a preliminary declaration of disclosure by the petitioner is required." (Fam. Code, § 2110.) This is because a preliminary declaration serves the purpose of ensuring notice of potential liability, just as would a section 425.11 statement of damages in personal injury

16

and wrongful death actions, or a section 425.115 written notice of the exact amount of punitive damages.

As in the instant case, in the marital dissolution case, *Andresen, supra,* 28 Cal.App.4th 873, the husband moved to set aside default judgment on the ground the trial court awarded to the wife default relief which went beyond the scope of the marital dissolution petition. The wife did not attach any values to the assets or debts listed in her petition property declaration and did not request division of the assets and debts in any particular manner. (*Id.* at p. 877.) The *Andresen* court held that the default judgment was not void under section 580, and the trial court did not err in denying the motion to set aside entry of default and vacate the default judgment. (*Id.* at p. 883.)

In reaching its holding, the *Andresen* court noted that "'The [Family Law Act ([former] Civ. Code, § 4000 et seq.)] abolished the traditional complaint, which often contained the standard prayer for general relief that we found . . . to be sufficient notice of a possible support award. The Act empowered and directed the Judicial Council to create, as a substitute for the traditional complaint, a mandatory printed standard form petition. (Civ. Code, § 4503.)'"[4] (*Andresen, supra,* 28 Cal.App.4th at p. 878, quoting *Lippel, supra,* 51 Cal.3d at pp. 1169-1170.)

"'[I]n 1970, the Judicial Council promulgated rule 1281 of the California Rules of Court, which established a mandatory standard form dissolution petition. This standard

---

[4] "Effective January 1, 1994, Family Code section 300 et seq. superseded the Family Law Act without substantive change." (*In re Marriage of Cantarella* (2011) 191 Cal.App.4th 916, 919, fn. 1.)

17

form petition, which, with minor modifications over the years, remains in use today, requires a petitioner to set forth certain statistical information in spaces provided, and to check boxes, from a series provided, which indicate the remedy or relief requested (e.g., legal separation, dissolution, or nullity of the marriage) and the specific relief being sought (e.g., property division, spousal support, child custody, child support or attorney fees). [¶] 'Coupled with the requirement that the respondent be served with a copy of the petition (Civ. Code, § 4503), the manner in which these boxes are checked, or not checked, informs and puts the respondent on notice of what specific relief the petitioner is, or is not seeking.'" (*Andresen, supra,* 28 Cal.App.4th at pp. 878-879, quoting *Lippel*, *supra*, 51 Cal.3d at pp. 1169-1170.)

In *Lippel*, a marital dissolution action, the court held that a plaintiff who checks the appropriate box in a form complaint provides adequate notice of the type of relief awarded in a default. (*Lippel*, *supra*, 51 Cal.3d at p. 1169; *Finney v. Gomez* (2003) 111 Cal.App.4th 527, 537.) Relying on *Lippel*, the *Andresen* court concluded that "due process is satisfied and sufficient notice is given for section 580 purposes in marital dissolution actions by the petitioner's act of checking the boxes and inserting the information called for on the standard form dissolution petition which correspond or relate to the allegations made and the relief sought by the petitioner. The [*Lippel*] opinion does not suggest that any greater specificity is required. Although we acknowledge the Supreme Court had no need to address the point, we find nothing in the language of *Lippel* which compels a conclusion that the amount of the relief requested, as contrasted with the type of the relief requested, must be inserted in the relevant form if

18

the form does not itself expressly demand such data." (*Andresen, supra,* 28 Cal.App.4th at p. 879.)

The *Andresen* court concluded that, "because the wife properly and fully completed the petition and its necessary attachments to the extent of the relief requested on the face of those documents, the husband was given adequate notice that the wife sought a division of the property and liabilities identified in the wife's papers. [Citation.] If he desired to be heard on the subject of the valuation and division of the listed items, he should have appeared." (*Andresen, supra,* 28 Cal.App.4th at pp. 879-880.)

Unlike in *Andresen*, here, Annette did not attach a property declaration to her Petition. Instead, she stated she was unaware of all such assets and debts but would file a stipulation for judgment fully disposing of all assets and debts or, alternatively amend her Petition if a stipulation was not filed. The issue here is whether the default judgment exceeds the scope of the Petition where the Petition requests the court to determine the marital property rights and liabilities but does not identify specific property. Joseph argues that Annette's failure to specify any property or debts at issue deprived him of notice of the relief awarded in the default judgment. We disagree.

Although the Petition does not list specific property and debts, Joseph appeared in the Petition proceeding by filing a Response, which requested the same relief for a determination of property rights requested in the Petition. In addition, Joseph included in his Response a property declaration listing specific marital assets and debts subject to disposition. Annette's preliminary declarations also provided Joseph with notice of the property disposed of in the default judgment. While generally, a default dissolution

19

judgment may not exceed the petitioner's demands, and any greater or differing relief is beyond the court's jurisdiction (*Lippel, supra,* 51 Cal.3d at p. 1167, *Andresen, supra,* 28 Cal.App.4th at p. 886), here, the court had jurisdiction, not only to grant the relief requested in Annette's Petition, but also to dispose of the property listed in Annette's preliminary declarations.

Joseph cites *Kahn, supra,* 215 Cal.App.4th 1113, for the proposition that the default judgment is void because Annette failed to list in the Petition the assets and debts disposed of by default judgment. In *Kahn*, we reversed default judgment, holding that the default judgment awarding $275,000 in damages for breach of fiduciary duty improperly exceeded the scope of the marital dissolution petition. (*Id.* at p. 1116.) In *Kahn*, the petitioner checked the form complaint box for "[o]ther" relief, without specifying the nature or amount of the relief sought, other than stating: "'Relief for [Robert's] breach of fiduciary duty pursuant to Family Code sections 1100 et seq.'" (*Ibid.*) The trial court struck the respondent's answer to the marital dissolution petition as a discovery sanction and awarded the petitioner $275,000 for breach of fiduciary duty. We held in *Kahn* that the petitioner did not provide sufficient notice under section 580 of the relief awarded in the default judgment, because the petitioner did not specify the nature and amount of damages requested. (*Kahn,* at p. 1116.)

We explained in *Kahn* that "It would be stretching *Andresen* too far to apply it in this case. Admittedly, we are dealing with a form complaint in a marital dissolution action. However, the checkbox for '[o]ther' relief is distinguishable from the checkboxes for a division of community property. It is a catchall category; it could encompass

20

practically any kind of relief, including relief that is not statutorily required in a marital dissolution action. The respondent is therefore entitled to notice of the specific nature and amount of any '[o]ther' relief sought before defaulting." (*Kahn, supra,* 215 Cal.App.4th at p. 1119.)

*Kahn* is distinguishable because, in the instant case, Annette did not request "other" relief. Annette checked the boxes for division of community property and determination of property rights. By checking those boxes, it was clear Annette was seeking disposition of all of the parties' assets and debts. Although Annette should have listed in her Petition the property subject to disposition, Annette placed Joseph on notice of the type of relief requested and further notified him in her preliminary declarations and disclosure declarations of the property subject to disposition.

Joseph's Response to the dissolution Petition and preliminary declaration demonstrated he was on notice of the relief Annette was seeking and the property subject to disposition. If he desired to be heard on the subject of the valuation and division of the listed items, he should have avoided having his Response stricken by complying with the court's orders to produce necessary discovery documents. (*Andresen, supra,* 28 Cal.App.4th at pp. 879-880.) Joseph should not be permitted to benefit from his recalcitrance, and set aside the default judgment based on a lack of notice of the relief requested in the Petition, when the record shows he received notice through the Petition and Annette's preliminary declarations, and requested the same relief in his own Response. The default judgment was therefore not void under section 580.

21

IV

ORDER STRIKING RESPONSIVE PLEADINGS

Joseph contends the trial court abused its discretion in striking his Response on June 18, 2012, pursuant to section 2023.010, subdivision (g). He argues the court did not have authority to issue a terminating sanction where there was no discovery motion to compel or any finding of a violation of a prior court order to provide discovery. We disagree.

Section 2023.010, subdivision (g) provides: "Misuses of the discovery process include, but are not limited to, the following: [¶] . . . [¶] (g) Disobeying a court order to provide discovery." Section 2023.030 provides: "To the extent authorized by the chapter governing any particular discovery method or any other provision of this title, the court, after notice to any affected party, person, or attorney, and after opportunity for hearing, may impose the following sanctions against anyone engaging in conduct that is a misuse of the discovery process: [¶] . . . [¶] (d) The court may impose a terminating sanction by one of the following orders:

"(1) An order striking out the pleadings or parts of the pleadings of any party engaging in the misuse of the discovery process. [¶] . . . [¶]

"(4) An order rendering a judgment by default against that party."

"Misuse of the discovery process may result in the imposition of a variety of sanctions. These include payment of costs, sanctions barring the introduction of certain evidence, sanctions deeming that certain issues are determined against the offending party, and sanctions terminating an action in favor of the aggrieved party. (Code Civ.

22

Proc., §§ 2023.020, 2023.030.)  Misuse of the discovery process includes failing to respond or submit to authorized discovery, providing evasive discovery responses, disobeying a court order to provide discovery, unsuccessfully making or opposing discovery motions without substantial justification, and failing to meet and confer in good faith to resolve a discovery dispute when required by statute to do so.  (Code Civ. Proc., § 2023.010, subds. (d)-(i).)  The court may impose sanctions '[t]o the extent authorized by the chapter governing any particular discovery method or any other provision of this title . . . .'  (Code Civ. Proc., § 2023.030.)"  (*Karlsson v. Ford Motor Co.* (2006) 140 Cal.App.4th 1202, 1214 (*Karlsson*).)

The trial court has broad discretion to impose sanctions for violations of court orders, including those intended to compel compliance with a party's disclosure and discovery obligations, subject to reversal only for arbitrary or capricious action.  (*Parker v. Wolters Kluwer United States, Inc.* (2007) 149 Cal.App.4th 285, 297; *Karlsson, supra,* 140 Cal.App.4th at p. 1217.)  "A decision to impose the ultimate sanction—a judgment in the opposing party's favor—should not be made lightly.  'But where a violation is willful, preceded by a history of abuse, and the evidence shows that less severe sanctions would not produce compliance with the discovery rules, the trial court is justified in imposing the ultimate sanction.'"  (*Parker,* at p. 297, quoting *Mileikowsky v. Tenet Healthsystem* (2005) 128 Cal.App.4th 262, 279-280.)

The striking of Joseph's Response did not constitute an excessive sanction. Joseph violated the trial court's October 26, 2009 order that "Respondent shall promptly provide Petitioner with an accounting of any monies withdrawn for the UCLA expenses.

23

Respondent shall further provide to Petitioner a copy of monthly statements for the Ameritrade account. Respondent shall also provide to Petitioner an accounting of any monies withdrawn after September 1, 2009." Joseph persisted for over two and a half years in refusing to produce the court-ordered Ameritrade documents, despite the trial court's order and Annette's repeated requests for the documents.

The trial court's order to produce the Ameritrade documents constituted a discovery order. It required Joseph to produce material documents requested by Annette, which revealed account activity and the value of funds contained in the Ameritrade account. The court-ordered documentation was crucial to a determination of the rights of the parties to the Ameritrade funds. Joseph committed willful discovery abuse, which caused the unavailability of material evidence. Joseph's ongoing recalcitrance for over two and a half years interfered with the trial court's ability to properly dispose of the marital property and subjected the Ameritrade funds to covert, unrestrained, improper expenditure by Joseph. Under such circumstances, the trial court's order striking Joseph's response was not an abuse of discretion and was proper under sections 2023.010, subdivision (g), and 2023.030, subdivision (d).

Joseph argues the trial court was precluded from entering default judgment because there was no entry of default. However, the record on appeal, including the clerk's transcript, indicate that the court entered default after Annette filed on December 11, 2012, a request to enter default, along with her default judgment prove-up documents. Although the court rejected Annette's request for default judgment because of inconsistencies in her prove-up documents, there is nothing in the record showing that the

24

court also rejected entry of default. Annette opposed Joseph's motion to set aside default on the ground default had been entered in December 2012, and therefore Joseph did not have standing to set aside default. There is nothing in the record indicating the trial court rejected this premise that Joseph lacked standing based on entry of default, particularly since the court thereafter proceeded with a default judgment hearing. Furthermore, an order entering default was not necessary because the trial court previously struck Joseph's Response.

Citing *In re Marriage of Loh* (2001) 93 Cal.App.4th 325 (*Loh*), Joseph argues the trial court did not have authority to dismiss his Response under section 2023.030 of the Civil Discovery Act because the trial court's order that Joseph produce Ameritrade documents is not the same as a discovery order to produce documents. In *Loh*, a child support modification proceeding, the father failed to comply with his agreement to provide the mother with requested tax returns. During the child support modification hearing, the trial court ordered child support increased. The father appealed the order, arguing it was, in effect, an improper discovery sanction. The *Loh* court agreed, concluding the order was "deep down, really only a discovery sanction" directed at the father for not turning over the tax returns. (*Loh* at p. 330.)

The *Loh* court reversed the support order on the grounds there was insufficient evidence supporting the increase in support, noting: "We reverse the ensuing child support order. Evidence of lifestyle, particularly a lifestyle subsidized by a new 'nonmarital partner' . . . is not a cheap substitute for proper discovery of income reported on tax returns." (*Loh, supra,* 93 Cal.App.4th at p. 327.) The *Loh* court further reasoned

that the mother could have brought a motion to compel the tax returns and requested sanctions, such as an issue sanction, evidence sanction, or monetary sanction. The court stated: "[I]n the face of the Legislature's having provided a clear method of relief for Victor's failure to turn over current income tax returns, and Pamela's not having availed herself of it, we cannot justify the order before us as a de facto discovery sanction." (*Id.* at p. 331.)

*Loh* is inapposite and does not support Joseph's contention the trial court was precluded from striking his Response. The instant case does not concern support modification proceedings or an order imposed as a de facto sanction for noncompliance with an agreement to produce documents. The instant case involves sanctions appropriately imposed under section 2023.030 on the ground Joseph willfully violated the court's order to produce Ameritrade documents. There is no merit to Joseph's argument that there was no discovery request, no order to produce documents pursuant to a discovery motion, and no violation of a discovery act order. The trial court's order to produce Ameritrade documents was a discovery order. Joseph's failure over a lengthy period of time to comply with the trial court's order to produce Ameritrade documents violated the Discovery Act and was an abuse of discovery. The trial court's order striking Joseph's Response therefore was authorized and proper under sections 2023.010, subdivision (g), and 2023.030, subdivision (d).

26

V

DISPOSITION

The judgment is affirmed.  Annette is awarded her costs on appeal.

CERTIFIED FOR PUBLICATION

CODRINGTON          
J.

We concur:


RAMIREZ          
P. J.


KING          
J.

27