Filed 9/23/20  Marriage of Heurlin CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re the Marriage of DEBRA M. and JOHN M. HEURLIN. | |
| DEBRA M. HEURLIN et al., | G057724 |
| Respondents, | (Super. Ct. No. 18D007868) |
| v. | O P I N I O N |
| JOHN M. HEURLIN, | |
| Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, Daphne Grace Sykes, Judge.  Reversed in part and remanded.

John M. Heurlin, in pro. per., for Appellant.

No appearance for Respondent Debra M. Heurlin.

Law Offices of Garrett S. Gregor and Garrett S. Gregor for Respondent David J. Fuller.

\*          \*          \*

John M. Heurlin (John) appeals from a default judgment in the dissolution of his marriage to Debra M. Heurlin (Debra).[1]  He raises three primary arguments on appeal.  First, he contends the default judgment is void because the court improperly determined the parties' property rights even though Debra's petition for dissolution did not specify any property subject to division.  Second, he claims the court erred by granting two ex parte requests because they did not comply with various procedural requirements.  Finally, he argues one of the ex parte requests was improper for the additional reason that it did not comply with the rules governing joinder of third parties and interpleader.

John's latter two contentions have no merit.  With respect to John's first contention, the court may have erred by entering a default as to the disposition of property because Debra's petition never detailed the property at issue.  But it is unclear if Debra's preliminary declaration of disclosure listed the necessary assets and debts.  We accordingly reverse in part and remand for further proceedings.

FACTS

John and Debra married in October 1984.  In September 2018, Debra filed a petition for dissolution of marriage.  The petition was presented on Judicial Counsel form FL-100.  In section 9 of that form, Debra checked a box requesting the court to: "Confirm as separate property . . . assets and debts in [the following list]."  The following list states, "The full nature and extent of the separate property claims of the parties are unknown to Petitioner at this time.  Petitioner reserves the right to amend this Petition upon proof or at the time of trial."  Likewise, in section 10 of the form, Debra checked a box requesting the court to:  "Determine rights to community and quasi-community

---

[1]  We refer to the parties by their first names for ease of reading and to avoid confusion, and not out of disrespect.

2

assets and debts.  All such assets and debts are listed [as follows]."  The following list states, "The full nature and extent of the community property and quasi-community property claims of the parties are unknown to Petitioner at this time.  Petitioner reserves the right to amend this Petition upon proof or at the time of trial."

On November 27, 2018, Debra served a deposition subpoena for the production of business records on the Law Offices of Garrett S. Gregor, who was counsel for the defendants in another case involving John (the FairWage matter).  One of the defendants in the FairWage matter, David J. Fuller, has filed a respondent's brief in this appeal.  Among other things, Debra's subpoena sought records regarding any settlement agreements involving John or payments made to him in the FairWage matter.

On December 18, 2018, Debra served a preliminary declaration of disclosure.  The next day, John filed a motion to quash Debra's deposition subpoena for the production of business records.  Among other things, he claimed the documents sought were not relevant to the dissolution proceedings because Debra's petition for dissolution did not identify any settlement funds from the FairWage matter.  On December 20, 2018, Debra filed a request for temporary emergency order requesting the court to freeze all funds from the settlement agreement in the FairWage matter and to order the funds turned over to the trust account of Debra's counsel.  Debra's attorney filed a declaration indicating that she provided notice of the ex parte hearing to John by telephone and e-mail.  The court granted the request for temporary emergency order that day and set a further hearing for January 28, 2019 when the temporary order would expire.  The court also ordered service on John on or before January 18, 2019 with a responsive declaration to be filed by John by January 24, 2019.  On December 30, 2018, Debra served a copy of the request for emergency order on John, and John filed an opposition on January 24, 2019.  On the date of the hearing, the court continued the matter to February 28, 2019.

On January 30, 2019, Debra filed a request to enter default against John along with declarations identifying her separate property and their community property. The clerk of the court entered John's default on the same day and served the documents on John on January 31, 2019.

On February 6, 2019, Fuller filed an ex parte request for order to permit him to join the dissolution proceedings and to interplead the disputed settlement funds from the FairWage matter. According to the request, the parties in the FairWage matter had reached a settlement agreement whereby John would receive $178,870 in two installments of $89,435 each. In August 2018, John had received the first of the two installment payments. As required by the court's December 20, 2018 order granting Debra's request for temporary emergency order, Fuller's counsel transmitted the second settlement installment payment of $89,435 to Debra's counsel. Given the parties' dispute over the second installment payment of $89,435, Fuller sought to interplead the funds. The court granted Fuller's request on the same day, February 6, 2019.

At the continued hearing on Debra's request for emergency order to freeze the settlement funds from the FairWage matter, the court issued a minute order stating, "Court takes this matter off calendar, as the matter is moot." In March 2019, the court held a hearing on John's motion to quash the deposition subpoena. According to the minute order, the court "order[ed] th[e] matter off calendar" because John did not appear. The court also continued the default prove-up hearing on the dissolution petition to April 24, 2019.

In support of the default prove-up, Debra filed a declaration for a default judgment of dissolution along with a property declaration proposing the assets and debts to be distributed to each party. The court accordingly entered a default judgment of dissolution. Among other things, the court divided the marital property, awarded certain community property to Debra and John, and confirmed the separate property belonging to each of them. In awarding community property to Debra, the court ordered half of the

4

settlement proceeds from the FairWage matter to be made payable to Debra's counsel in the amount of $89,435.

DISCUSSION

John contends the default judgment is void under Code of Civil Procedure section 580 because Debra's petition for dissolution did not specify any separate or community property subject to division by the court.[2] He likewise argues the court did not have subject matter jurisdiction under Family Code section 2010 to determine property rights that were not set forth in the petition. He also claims the court erred by granting Debra's request for temporary emergency order and Fuller's request for order on an ex parte basis because they failed to comply with the procedural requirements for ex parte applications. Finally, he argues Fuller's ex parte request for order was improper because it violated joinder and interpleader rules. John's latter two contentions have no merit. With respect to his first contention, we vacate the default judgment in part as to the property division and remand for the court to decide whether its judgment covers property listed in Debra's December 2018 preliminary declaration served prior to entry of default.

*The default judgment is vacated with further instructions to the court.*

Section 580, subdivision (a) provides: "The relief granted to the plaintiff, if there is no answer, cannot exceed that demanded in the complaint . . . ." "'"[T]he primary purpose of the section is to guarantee defaulting parties adequate notice of the maximum judgment that may be assessed against them."'" (*In re Marriage of Eustice* (2015) 242 Cal.App.4th 1291, 1302 (*Eustice*).) "The limitation on default judgments

---

[2] All further statutory references are to the Code of Civil Procedure unless otherwise stated.

5

under section 580 applies to marital dissolution proceedings. That section 'requires that a default judgment in a dissolution action which is greater than the amount specifically demanded in the petition be considered void as beyond the court's jurisdiction . . . .'" (*Id.* at p. 1303; see *Burtnett v. King* (1949) 33 Cal.2d 805 [court erred by awarding community property in a default judgment where the pleadings did not ask the court to determine ownership of the property]; *Biscaro v. Stern* (2010) 181 Cal.App.4th 702 [court erred by awarding condominium to the wife in a default judgment because the property was not identified in the petition for dissolution].)

But "[t]he complaint or petition is not necessarily the sole statement of relief that forms the boundaries of relief granted in a default judgment . . . . A petitioner's list of assets and debts in a property declaration, preliminary declaration, and disclosure declaration fulfill the same notice function in a marital dissolution as do a statement of damages and punitive damages notice, provided the declarations are served on the respondent before entry of default." (*Eustice*, 242 Cal.App.4th at p. 1304.)

In *Eustice*, the court found a default judgment did not exceed the scope of a petition for dissolution of marriage even though the petition did not identify any specific property. (*Eustice*, 242 Cal.App.4th at pp. 1303-1308.) In the petition, the wife checked the boxes for the division of community property and determination of property rights. (*Id.* at p. 1296.) She stated she was unaware of all the assets and debts but would file a stipulation for judgment or amend the petition. (*Ibid.*) After filing the petition, the wife filed two preliminary declarations listing all known assets and debts subject to disposition. (*Id.* at pp. 1298-1299.) The court found these preliminary declarations satisfied the requirements of section 580. (*Id.* at p. 1304.) "Although [the wife] should have listed in her Petition the property subject to disposition," the court held the husband was "on notice of the type of relief requested and [was] further notified [by the] preliminary declarations and disclosure declarations of the property subject to disposition." (*Id.* at p. 1307.)

6

Here, as in *Eustice*, Debra checked the appropriate boxes on the petition for dissolution and requested the court determine the parties' property rights. The nature and type of relief requested accordingly is clear from the pleading. Debra also served a preliminary declaration of disclosure in December 2018 and declarations identifying separate and community property in connection with her request to enter default. With respect to the latter, the property identified in those declarations is consistent with the property disposed of in the judgment. But the court clerk served these declarations *after* default was entered. Debra filed the request for entry of default and supporting declarations on January 30, 2019. The clerk of the court entered default on the same day and served the documents on John on January 31, 2019. The declarations accordingly could not alleviate any notice concerns under section 580. (*Eustice*, 242 Cal.App.4th at p. 1304 ["A petitioner's list of assets and debts in a property declaration, preliminary declaration, and disclosure declaration fulfill the . . . notice function in a marital dissolution . . . provided the declarations are served on the respondent before entry of default"].) With respect to Debra's December 2018 preliminary declaration, we cannot determine if it satisfies the requirements of section 580 because the declaration is not part of the record on appeal.

We accordingly vacate the default judgment as to the property division and remand for the court to decide whether its judgment covers property listed in Debra's December 2018 preliminary declaration served prior to entry of default that may not be included in our record on appeal. If the declaration lists any of the property disposed of in the default judgment, the entry of default is valid as to that property. The court also should proceed with a prove-up hearing where Debra can introduce evidence bearing on the division of any property specified in her preliminary declaration served prior to entry of default. For property not listed in the declaration, the entry of default is void and Debra must file an amended petition listing the additional property to be adjudicated.

7

*The court did not abuse its discretion by granting the ex parte applications.*

John contends the court erred by granting Debra's request for temporary emergency order to freeze the settlement funds from the FairWage matter and Fuller's request for order to join the case and interplead the settlement funds. He claims he did not receive appropriate notice of these ex parte requests and they were not supported by declarations establishing irreparable harm. He also argues Debra and Fuller did not serve their ex parte papers at the first reasonable opportunity. "We review a trial court's ruling on an ex parte application for abuse of discretion." (*People ex rel. Allstate Ins. Co. v. Suh* (2019) 37 Cal.App.5th 253, 257.) For the reasons below, the court did not abuse its discretion.

A. Applicable Law

California Rules of Court, rule 5.151(b)(2) specifies a request for emergency order (also known as an ex parte application) in a family law case is used to, inter alia, request the court "[m]ake orders to help prevent immediate loss or damage to property subject to disposition in the case." (*Ibid*.) "An applicant must make an affirmative factual showing of irreparable harm, immediate danger, or any other statutory basis for granting relief without notice or with shortened notice to the other party." (Cal. Rules of Court, rule 5.151(d)(2).) The applicant also "must give notice to all parties or their attorneys so that it is received no later than 10:00 a.m. on the court day before the matter is to be considered by the court." (Cal. Rules of Court, rule 5.165(b).) The application "must be accompanied by a completed declaration regarding notice" with one of the following statements: (1) "The notice given, including the date, time, manner, and name of the party informed, the relief sought, any response, and whether opposition is expected and that, within the applicable time under rule 5.165, the applicant informed the opposing party where and when the application would be made;" (2) "That the applicant in good faith attempted to inform the opposing party but was unable to do so, specifying

8

the efforts made to inform the opposing party;" or (3) "That, for reasons specified, the applicant should not be required to inform the opposing party."  (Cal. Rules of Court, rule 5.151(e)(2).)  Finally, the applicant "must serve the papers on the other party or on the other party's attorney at the first reasonable opportunity before the hearing."  (Cal. Rules of Court, rule 5.167(a).)  "The court may waive this requirement in extraordinary circumstances if good cause is shown that imminent harm is likely if documents are provided to the other party before the hearing."  (*Ibid.*)

### B.  Debra's Request for Temporary Emergency Order

In support of her ex parte request, Debra submitted a declaration supporting the existence of immediate danger in the absence of relief.  She explained John already had received half of the settlement funds from the FairWage matter and that payment of the remaining half was imminent.  Although she tried to obtain documents related to those funds through various discovery requests and sent a meet-and-confer letter to John asserting "the community's interest in the settlement award," John never responded.  Debra then served a deposition subpoena seeking relevant documents from the FairWage matter, which John opposed with a motion to quash arguing the documents were not relevant to the dissolution proceeding.  Given John's silence on the matter, the imminence of the remaining settlement payment to him, and lacking "assets in the marital estate to offset against the community's interest in said settlement funds in the event the remaining proceeds [were] released" to John, Debra's declaration provided a factual basis for the risk of immediate loss and why relief was needed immediately.

Debra's attorney also submitted a declaration satisfying the notice requirements of California Rules of Court, rules 5.151(e)(2) and 5.165(b).  The declaration states the attorney informed John of the ex parte hearing via telephone and e-mail on the day before the hearing.  The attorney also submitted a copy of her e-mail to John.  John does not complain about the substance of the e-mail and instead argues the e-

9

mail was sent a few minutes late at 10:13 a.m.  Regardless of when the e-mail was sent, the declaration establishes the attorney attempted to provide notice via telephone at 9:54 a.m.

While John further contends Debra did not serve the ex parte papers "at the first reasonable opportunity"  (Cal. Rules of Court, rule 5.167(a)), "[t]he 'first reasonable opportunity' contemplated . . . often means serving opposing counsel *at the ex parte hearing itself.*"  (Weil & Brown, Cal. Practice Guide:  Civil Procedure Before Trial (The Rutter Group 2020) ¶ 9:370.2.)  "Formal service . . . rarely will be possible because ex parte matters typically are heard on as little as 24-hour notice . . . ."  (*Ibid.*)  Because John did not appear at the ex parte hearing, Debra was not able to serve the papers at that time.  But the court ordered her to serve the papers by January 18, 2019, and she complied with that order and served a copy of the papers on December 30, 2018.

Finally, John claims the court could not grant Debra's ex parte request because the petition for dissolution did not identify the settlement funds.  But Debra filed the ex parte request *after* her preliminary declaration.  As explained *ante*, "[a] petitioner's list of assets and debts in a property declaration, preliminary declaration, and disclosure declaration fulfill the same notice function in a marital dissolution as do a statement of damages and punitive damages notice, provided the declarations are served on the respondent before entry of default."  (*Eustice*, 242 Cal.App.4th at p. 1304.)  Further, it is clear John was on notice that Debra was claiming a community property interest in the settlement funds.  She had served a subpoena seeking documents regarding any settlement agreements involving John or payments made to him in the FairWage matter, and John filed a motion to quash the subpoena.  He also had received a letter from Debra's counsel claiming a community property interest in the settlement funds.  John's ostrich-like approach to his dissolution is regrettable, having no apparent purpose but to delay the proceeding and to increase its cost to Debra.

For the above reasons, the court did not abuse its discretion by granting Debra's request for temporary emergency order. We also note John has not established any prejudice from the court's ruling. Although the court granted the initial request for temporary emergency order, the court ultimately took the continued hearing off calendar and found the "matter [was] moot" presumably because the court already had required the funds to be turned over to the trust account of Debra's counsel. Even more fundamentally, if John received adequate notice that the second installment of the settlement funds were subject to disposition in the dissolution proceeding, he voluntarily chose not to contest the funds by allowing his default to be taken, essentially conceding the issue. If he did not receive adequate notice by the preliminary declaration or otherwise, he will have an opportunity to contest the issue by responding to Debra's amended petition.

### C. Fuller's Request for Order

John raises the same arguments with respect to Fuller's ex parte request for order. He claims it was unsupported by a declaration establishing irreparable harm or proper notice. He also contends he was never served with the moving papers. Finally, he argues the court "lacked the jurisdiction to consider the ex parte application after John['s] default."

None of John's contentions have merit because John was no longer an active party in the litigation after the clerk of the court entered default on January 30, 2019. Default was entered *before* Fuller filed his request for order in February 2019. John accordingly was not entitled to notice of any further court hearings. (§ 1010 ["No . . . notice or paper, other than amendments to the pleadings, or an amended pleading, need be served upon any party whose default has been duly entered or who has not appeared in the action or proceeding"].) As an often cited treatise explains, "[o]nce a default is entered, defendant is no longer an active party in the litigation and is not

11

entitled to notice of court hearings or proceedings." (Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2020) ¶ 5:71.1.) "Entry of defendant's default instantaneously cuts off its right to appear in the action. The defendant is 'out of court.' It has no right to participate in the proceedings until either (a) its default is set aside (in which event, it may respond to the complaint), or (b) a default judgment is entered (in which event, it may appeal)." (*Id.*, ¶ 5:6.) The court accordingly did not err by granting Fuller's request for order.[3] And, as noted above, John either had notice that the settlement funds were subject to the court's disposition, or, if not, he will have an opportunity to contest the disposition. He has not been prejudiced.

*Even if Fuller's ex parte request for order did not comply with joinder and interpleader rules, John has not established any resulting prejudice.*

John also contends Fuller's ex parte request for order was improper because Fuller was not properly joined as a party pursuant to the joinder procedures under California Rules of Court, rule 5.24. He likewise claims Fuller should have filed an action for interpleader under section 386. But even assuming the ex parte request for order was procedurally defective, John has not established any prejudice arising from the court's order granting the ex parte request.

California Rules of Court, rule 5.24(e)(2) provides, "The court may order that a person be joined as a party to the proceeding if the court finds that it would be appropriate to determine the particular issue in the proceeding and that the person to be joined as a party is either indispensable for the court to make an order about that issue or is necessary to the enforcement of any judgment rendered on that issue." A third party "served with an order temporarily restraining the use of property that is in his or her

---

[3]    While Debra did not file a request for entry of default within 10 days after the time for service of a responsive pleading was due as required by California Rules of Court, rule 3.110(g), John does not challenge the judgment on these grounds. We accordingly do not address the issue.

12

possession or control or that he or she claims to own . . . may apply to the court for an order joining himself or herself as a party to the proceeding." (Cal. Rules of Court, rule 5.24(c)(3).) All applications for joinder must be made by serving and filing Judicial Counsel Form FL-371, which must be "accompanied by an appropriate pleading setting forth the claim as if it were asserted in a separate action or proceeding." (*Id.*, rule 5.24(d)(1).) The hearing also must be noticed for a date less than 30 days from the date of filing the notice (*id.*, rule 5.24(d)(1)), and "[a] blank copy of . . . [Judicial Counsel Form FL-373] must be served" with the notice of motion and pleading. (*Id.*, rule 5.24(d)(2).)

Pursuant to section 386, "[a]ny person . . . against whom double or multiple claims are made, or may be made, by two or more persons which are such that they may give rise to double or multiple liability, may bring an action against the claimants to compel them to interplead and litigate their several claims." (§ 386, subd. (b).) The statute then details the procedure for filing a complaint or cross-complaint in interpleader. (*Ibid.*)

Even if Fuller did not comply with all of the above procedural requirements, the settlement funds from the FairWage matter already were subject to the court's December 20, 2018 order granting Debra's request for temporary emergency order. That order required "all settlement funds [to] be turned over to" the trust account of Debra's counsel within 48 hours of the court's order. The order further required "[a]ny remaining proceeds not yet paid out [to] be turned over . . . at time of settlement payment." The order continued to be in effect until the February 28, 2019 hearing. Thus, even if Fuller failed to comply with the necessary procedural requirements to join the proceedings on February 6, 2019, and we reversed on those grounds, the settlement funds from the FairWage matter were still subject to the court's December 20, 2018 order. We accordingly need not decide whether the court erred by granting Fuller's request for order on procedural grounds because John cannot establish any resulting prejudice.

13

DISPOSITION

The default judgment is vacated as to the property division and remanded for the court to determine whether the judgment covers property listed in Debra's preliminary declaration served prior to entry of default. The entry of default remains intact for any property listed in that relevant declaration, and the court should conduct a prove-up hearing regarding division of that property. Otherwise, the entry of default is void for any property that is not listed in the declaration, and Debra must be allowed to file and serve an amended petition as to that property. Each party shall bear their own costs incurred on appeal.

IKOLA, J.

WE CONCUR:

MOORE, ACTING P. J.

ARONSON, J.

14