Filed 4/6/26 (unmodified opinion attached)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re Marriage of KATIA X. and JAMES M. JENKINS. | |
| KATIA X. JENKINS,<br><br>    Appellant,<br><br>                v.<br><br>JAMES M. JENKINS,<br><br>    Respondent. | A169217<br><br>(Contra Costa County<br>Super. Ct. No. D2100061)<br><br>ORDER MODIFYING OPINION<br>AND DENYING REHEARING;<br>NO CHANGE IN JUDGMENT |

BY THE COURT[*]:

The court orders that the opinion filed in this appeal on March 18, 2026, be modified as follows:

1. On page 1, in the first sentence of the first paragraph add the word "from" before "the denial" so the sentence reads:

   Katia Jenkins appeals from an order setting aside a default judgment in this marital dissolution case and from the denial of her request for a statement of decision following that ruling.

---

[*] Brown, P. J., Streeter, J., Moorman, J. (Judge of the Mendocino Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution)

2. On page 4, in the first paragraph of section I.B., after the sentence that ends "default judgment prove-up." add the following sentence to the end of the paragraph:

> As Katia's counsel later put things when the matter became controversial in argument on a motion by James to set aside the judgment, this informal docketing activity raised a question whether the court "went way beyond what [it] should have done at the default prove-up hearing."

3. On page 4, in the first sentence of the last paragraph that continues on to page 5, replace "ex parte" with "informal" so the sentence reads:

> So far as we can discern, the expanded agenda appears to have come about based on a series of informal, off-the-record communications to the court from Katia's counsel (made part of the record in connection with James's later motion to set aside the judgment).

4. On page 5, in the second sentence of the last paragraph that continues on to page 6, delete ", ex parte" and replace with ", off-the-record" so the sentence reads:

> Here, too, the informal, off-the-record communications to Judge Coats clarify what happened.

5. On page 5, in the third sentence of the last paragraph that continues on to page 6, delete "by ex parte transmission" so the sentence reads:

> The form FL-170 provided with counsel's letter to Judge Coats prior to the hearing includes a sworn statement from Katia.

6. On page 7, in the first full paragraph, in the first sentence, change "Without characterizing the 22 Winship Lane house as community or separate property, or mentioning the circumstances of its acquisition and ownership, the default judgment awarded the house" to "Without considering whether James might have a separate property interest in the 22 Winship Lane house or whether the house might be James's separate property entirely, the court

described it as community property and awarded it" (retaining footnote 6) so the sentence reads:

> Without considering whether James might have a separate property interest in the 22 Winship Lane house or whether the house might be James's separate property entirely, the court described it as community property and awarded it to Katia as her separate property, subject to a first equalizing payment to James of $200,000 to be made within 120 days of entry of judgment, plus a second equalizing payment of $247,364.67[6] within 120 days of Katia's receipt of "the sales proceeds from the sale of her mother's home (i.e. [Katia's] inheritance)."

7. On page 7, delete the last sentence of the first full paragraph and replace with the following sentence:

> The judgment awards physical custody of the couple's minor son to Katia with legal custody to both parents, and does not award spousal support, as Katia was "not asking for support."

8. On page 11, in the second sentence of the second paragraph of section I.D., change "ex parte" to "informal" before "communications" so the sentence reads:

> Counsel for James suggested that the calendaring error and the informal communications preceding the hearing may amount to fraud under Family Code section 2122, subdivision (a), but at the very least would support a finding of mistake under Family Code section 2122, subdivision (e)

9. On page 12, in the first sentence of the last paragraph that continues on to page 13, delete "at" before "for" so the sentence reads:

> Pressing the matter further, Katia filed an ex parte request for a statement of decision under Code of Civil Procedure section 632 and Family Code section 2127.

10. On page 13, in the second sentence of the first paragraph of section II.A., delete the language "does not apply" and replace with "in

3

family law cases—applies only to 'general civil law case[s]' " so the sentence reads:

> Against that backdrop, she contends that (1) Family Code section 2121 authorizes family courts to grant relief from judgments in divorce actions on six exclusive grounds set forth in section 2122, and James either failed to allege a basis for or was time-barred from seeking relief from the default judgment on any of the specified grounds; (2) Code of Civil Procedure section 580—which Katia contends is "not a Relief from Judgment statute" in family law cases—applies only to "general civil law case[s]"; (3) the family court failed to make any factual findings supporting its vacatur of the default judgment, as it was required to do under Family Code section 2121, subdivision (b), or to issue a statement of decision, as required both by Code of Civil Procedure section 632 and by Family Code section 2127; and (4) having failed to move to set aside the default (as distinguished from the default judgment), James remains in default and any relief granted should have been limited to the holding of a properly noticed default judgment prove-up hearing.

11. On page 13, in the last paragraph that begins "James's principal contention," and continues on to page 14, in the fourth sentence delete "ex parte" and replace with "based on nonpublic communications between Katia's counsel and the court" so the sentence reads:

> He also points out that Katia failed to give him any notice of the scheduled prove-up hearing, since the only publicly known date for the hearing was incorrect, the original, incorrect calendar setting having been changed based on nonpublic communications between Katia's counsel and the court.

12. On page 15, in the third sentence of the last paragraph that continues on to page 16, add "family law" after "in a certain class of" so the sentence reads:

> In speaking of "exclusiv[ity]," they simply recognize that, by preempting the traditionally more open-ended equitable grounds for judgment set-aside orders, the Legislature sought to provide greater certainty and enhance the finality of judgments in a certain class of family law cases by tightening the grounds for

4

vacatur in those cases and establishing clear limitations periods in which such relief may be sought.

13. On page 17, in the first sentence of the last paragraph that continues on to page 18, delete "sometimes" after "decisionmaking must" and add "or mixed questions of law and fact" after "give way on questions of law" so the sentence reads:

> But traditional appellate deference to discretionary trial court decisionmaking must give way on questions of law or mixed questions of law and fact.

14. On page 18, in the citation to *Ornelas v. United States* and *People v. Cromer* at the end of the paragraph that begins on page 17, move the period from outside of the parenthesis to the inside of the parenthesis.

15. On page 18, in the first paragraph of section II.B.I., in the citation for *In re Marriage of Eustice* add a comma after "see."

16. On page 18, in the third sentence of the first paragraph of section II.B.1., delete "recognized authorities on family law practice" and replace with "leading treatise writers" (retaining footnote 12) so the sentence reads:

> Moreover, James tells us, numerous cases (see, e.g., *In re Marriage of Eustice* (2015) 242 Cal.App.4th 1291, 1303 (*Eustice*); *Biscaro v. Stern* (2010) 181 Cal.App.4th 702, 711)[12] and leading treatise writers (Hogoboom & King, *supra*, ¶¶ 3.179, 3.213, 3.257, 3.260.1, 3.276) have long recognized that section 580 applies in dissolution proceedings.

17. On page 19, please delete the short cite for *In re Marriage of Lippel*.

18. On page 20, in the first sentence of the last paragraph that continues on to page 21, delete "since" and replace with "which is premised on the recognition that" so the sentence reads:

> Arguably under *Andresen*—which is premised on the recognition that family law practice is designed to be friendly to unrepresented litigants—it is enough simply to check the box on an FL-100 standard form petition indicating that property

division will be sought, since particulars must always be provided later in the mandatory disclosure process.

19. On page 23, in the second sentence of the last paragraph that begins on page 22, add a "(2)" after "subdivisions (a), (b), (c) or (d), and" so the sentence reads:

> This argument rests on two principal contentions: (1) James has never alleged and the record does not support the applicability of Family Code section 2122, subdivisions (a), (b), (c) or (d), and (2) Family Code section 2122, subdivision (e), is inapplicable.

20. On page 24, in the last paragraph that continues on to page 25 please delete the period outside the parenthesis after the citation to *In re Marriage of Kahn* and *Van Sickle v. Gilbert*.

21. On page 27, in the second sentence of the first full paragraph, delete "ex parte" and replace with "nonpublic" before "correction" so the sentence reads:

> The court clearly believed, and we agree, that the clerical error in setting the original hearing date, together with the later nonpublic correction of that date, plus Katia's reliance on mailed service to an incorrect address, deprived James of notice of the financial jeopardy he was in.

22. On page 27, after the first full paragraph that ends "at the May 27, 2022 hearing on the ISTD." add the following language as a new paragraph:

> In a rehearing petition, Katia quibbles about whether, in fact, the court informally agreed to consider her default prove-up request at the hearing on January 24, 2022. She also contends there is no real issue here about what papers were before the court concerning the prove-up request, since the documentation considered by the court can be inferred from the form of default judgment as filed. According to Katia, under the applicable rules governing default proceedings and judgments (Cal. Rules of Court, rules 5.401, 5.407, 5.409), the court was not obligated to hold a hearing on her prove-up request and could simply take the proposed default judgment under submission based on a

6

declaration. Perhaps so, but in "allow[ing] judgments . . . to be submitted by declaration" (Cal. Rules of Court, rule 5.409), any such declaration must be filed and the submission must be on the public record. Fundamentally, there is an issue of transparency here. Whether a respondent has defaulted or not, family courts must conduct their business in public, particularly on something as significant as whether a proposed judgment has been taken under submission or what matters are proposed to be included in a judgment.

23. On page 29, in the paragraph that begins "On this record," adjust the citation to the California Constitution so it reads:

(Cal. Const., art. VI, § 13 [reversal requires appellate court to conclude that "error complained of has resulted in a miscarriage of justice"]; see *Cassim v. Allstate Ins. Co.* (2004) 33 Cal.4th 780, 800–805.)

The modifications effect no change in the judgment.

The petition for rehearing is denied.


Dated: _____          _____ P. J.

7

Trial Court:        Superior Court of California, County of Contra Costa

Trial Judge:        Hon. Ayana K. Young

Counsel:            Oliveri Law and Meghan E. Oliveri for Appellant.

                    Law Office of Stephanie J. Finelli and Stephanie J. Finelli for Respondent.

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re Marriage of KATIA X. and JAMES M. JENKINS. | |
| KATIA X. JENKINS, Appellant, v. JAMES M. JENKINS, Respondent. | A169217 (Contra Costa County Super. Ct. No. D2100061) |

Katia Jenkins appeals from an order setting aside a default judgment in this marital dissolution case and the denial of her request for a statement of decision following that ruling. The primary issues we must decide are (1) whether a default judgment adjudicating certain property division issues exceeded the relief requested in Katia's dissolution petition, warranting vacatur of the judgment under Code of Civil Procedure section 580; and (2) alternatively, whether the family court's finding that Katia's former husband, James Jenkins, lacked notice of the default judgment proceedings pending against him warrants vacatur of the judgment under Family Code sections 2121 and 2122 on grounds of mistake. We answer both questions yes. We also reject Katia's claim that the family court committed reversible

error by failing to issue a statement of decision and make factual findings in support of its set-aside order.  Seeing no merit in the appeal, we affirm.[1]

## I. BACKGROUND

### A.

After more than twenty-two years of marriage, Katia and James separated in October 2020.  Katia, then unrepresented, filed a standard form dissolution petition (FL-100)[2] on January 13, 2021.  In the sections of the petition asking her to list separate property and community property, Katia stated "To be determined."  A later-filed proof of service showed personal service of the summons and petition on James on April 14, 2021, at 24 Mariposa Lane in Orinda.  James failed to file an answer.

In an effort to move the case forward, Katia retained counsel, who substituted into the case in September 2021.  She then took James's default on October 22, 2021.  Along with her request for entry of default (FL-165), Katia filed a request for an order bifurcating the issue of termination of marital status.  The clerk entered James's default the same day Katia requested it, and, by handwritten annotation, set a hearing on bifurcation and termination of marital status for "1/24/21."[3]  The default, as entered, shows that the clerk mailed it to James at the 24 Mariposa Lane address, where personal service of the petition had been effected.

---

[1] As is customary in family law cases, we use the parties' first names for clarity, not out of disrespect.  (*In re Marriage of Swain* (2018) 21 Cal.App.5th 830, 832, fn. 1.)

[2] All further references to form pleadings and disclosures are to family law forms in the "FL" series of Judicial Council approved forms.

[3] January 24, 2021 having passed at that point, the date specified for the hearing was obviously an error.

Attached to Katia's request for entry of default were preliminary disclosures pursuant to the mandatory disclosure rules (Fam. Code, § 2104) that added some information beyond what she provided in her petition. An Income & Expense Declaration (FL-150) showed that Katia earned a base salary at a technology company, Palo Alto Networks, of $11,333 per month, plus bonuses averaging $941 per month and "other" monthly income of $749. She listed $3,000 in cash and deposit accounts. Her monthly expenses were calculated to be $7,903. Her pay stubs showed she held interests in employee stock options (ESPPs) and restricted stock grants (RSUs) as part of her pay.

A Property Declaration (FL-160), also attached to Katia's request for entry of default, listed the marital residence as 22 Winship Lane in Walnut Creek. The Property Declaration stated that the 22 Winship Lane house was acquired in 1998. It showed that, as of October 2021, the house had a gross market value of $1,400,000; was subject to $450,000 in mortgage indebtedness; and had a net fair market value of $950,000. Katia proposed a fifty-fifty division, with $475,000 going to each spouse. Along with the house, she listed two vehicles (a 2016 Ford Edge and a 2017 Ford F150), stating that the values of the vehicles and her proposal for their division were "TBD."

Also listed on the Property Declaration was $80,000 worth of household furniture, furnishings, and appliances, which Katia proposed be awarded to her. Under a category in the Property Declaration for stocks, bonds, and other securities, Katia listed her Palo Alto Networks ESPPs and RSUs. Her proposed division of the ESPPs and RSUs was "TBD." In addition, the Property Declaration listed "Several . . . unknown" retirement and pension plan accounts, stating "TBD" for a proposed division. On the

3

debt side of the ledger, Katia listed "Several joint [credit] cards," $13,000 on a loan for one of the vehicles, and "TBD" for the total owed and the proposed division of all joint non-mortgage debts.

On December 17, 2021, in a further disclosure pursuant to the mandatory disclosure rules (Fam. Code, § 2105) Katia filed final disclosures (again using FL-150 and FL-160 forms) that were substantially the same as her preliminary disclosures. She apparently served both the preliminary disclosures and the final disclosures on James by mailed service, although it is unclear to what addresses service was directed.[4]

**B.**

The court held a hearing on Katia's request for an order bifurcating issues for trial and terminating marital status on January 24, 2022. At some point, however, the agenda for the hearing expanded. While none of the filed pleadings listed in the docket reveals how this happened, what was originally calendared as a hearing on bifurcation and termination of marital status was converted into a combined hearing on bifurcation and status as well as on default judgment prove-up.

So far as we can discern, the expanded agenda appears to have come about based on a series of ex parte communications to the court from Katia's counsel (made part of the record in connection with James's later motion to

---

[4] A declaration by Katia's counsel, filed in connection with James's later motion to set aside the default judgment, states that "our office served [the] Preliminary Declaration of Disclosure on [James] via US Mail, to both the Orinda and Walnut Creek addresses, and we subsequently filed with the Court a Form FL-141 regarding the service." This declaration does not state the exact addresses counsel used for mailed service of these documents (if the "Walnut Creek address[]" is 22 Winship Lane in Walnut Creek, it seems odd that Katia would mail documents to her own residence address, since, by then, James had been living elsewhere for more than a year).

set aside the judgment).  On December 14, 2021, Katia's counsel wrote an email to the court clerk requesting that a default prove-up be added to the January 24, 2022 hearing calendar.  Then, four days before the hearing date, Katia's counsel wrote a letter directly to the assigned judge (Judge Coats) attaching a proposed form of default judgment (FL-180) supported by Katia's Declaration for Default or Uncontested Dissolution (FL-170).

While the above packet of documents appears to have been lodged with the court informally, what exactly Judge Coats had before her as a basis for consideration of Katia's default judgment prove-up request is unclear from the pleadings on file.  Thus, the status of the proceedings known to the public—and to James, had he been checking—was unknown.  The transcript of the hearing on January 24, 2022 makes no mention of a default judgment prove-up request, and the brief testimony Katia gave at the hearing concerns only the issues of bifurcation and marital status.  A minute order, however, shows that Judge Coats granted "[counsel's] request for default judgment" that day.

The court filed a judgment a few days later, on January 28, 2022, in exactly the form Katia proposed.  Here, too, the informal, ex parte communications to Judge Coats clarify what happened.  The form FL-170 provided with counsel's letter to Judge Coats by ex parte transmission prior to the hearing includes a sworn statement from Katia.  In that statement, Katia attests to her election to proceed by default, her service of the requisite preliminary disclosures, and her waiver of any disclosures from James.  She states, among other things, that James "was served back on April 14, 2021 by a third party at the residence of [his] girlfriend, which is where [he] is living."  She says, "[James] and I have talked about the divorce."

5

As an explanation for her stated need to proceed by default, Katia claimed that "[James] has repeatedly said he's getting an attorney" and he has "threaten[ed] me about this divorce." Despite his professed intention to retain counsel, Katia stated, James "has not actually gotten involved in the divorce." "Instead," she explained, "he ignores it and only lashes out at me when he is confronted with it and it moving forward." She concluded her explanation for why a default judgment should be entered with evident (and understandable) impatience, stating, "This just needs to end and he has had plenty of time to respond and has chosen not to."

With respect to issues of spousal support and child custody and visitation (the couple had a teenage son who was about to graduate from high school), Katia stated as follows. "[James] was the primary wage earner during our marriage, but since our separation, I have had to support myself and our son. [James] has checked out and refuses to participate. I simply want to move on and want this case done." "Given the small amount of time left for support," Katia said, James's "refusal to participate in this case and the cost that would be involved in trying to figure out what is going on with James, I simply request that the Court reserve child support until it terminates when our son graduates this coming Spring."

Apparently based on the showing in Katia's sworn statement and the disclosures on file, the default judgment signed by Judge Coats found, inter alia, as follows: "[Katia] was the at-home parent during the marriage while [James] was the wage earner. Their marriage was focused on [James's] career and his advancement. [¶] The Parties are splitting all assets and [James] will receive payment for his interest in the family home from [Katia's] future inheritance. [¶] [James] has not participated in this case and

6

has not asked for support. [Katia] has been able to keep her employment and therefore, no longer seeks support in this case."[5]

Without characterizing the 22 Winship Lane house as community or separate property, or mentioning the circumstances of its acquisition and ownership, the default judgment awarded the house to Katia as her separate property, subject to a first equalizing payment to James of $200,000 to be made within 120 days of entry of judgment, plus a second equalizing payment of $247,364.67[6] within 120 days of Katia's receipt of "the sales proceeds from the sale of her mother's home (i.e. [Katia's] inheritance)." The judgment does not address spousal support or child custody, as, apparently, Judge Coats found no need to address those issues.

Several months after entry of the default judgment, in early May 2022, Katia filed a request for an order authorizing the court clerk to sign an

---

[5] The default judgment divided other assets and debt that, like the 22 Winship Lane house, had been identified in Katia's disclosures as subject to division according to an arrangement "TBD" as follows: (1) the 2016 Ford Edge and all household furnishings appliances, jewelry and personal property in Katia's possession to her; (2) all checking, savings or other financial accounts, respectively, in James's or Katia's name and other financial accounts to the party named on the account; (3) all credit cards and debts to Katia's name, the loan on 2016 Ford Edge and the mortgage on the 22 Winship Lane house to her; (4) the ESPP/RSUS through Katia's employer Palo Alto Networks to her; and (5) the 2017 Ford F150 vehicle, loan on that vehicle, household furniture, furnishings, appliances, jewelry and personal property in James's name or in his possession to him.

[6] James's interest in the 22 Winship Lane was found to be $475,000. The total amount of the equalizing payment payable to him, $447,364.67, was calculated net of certain amounts Katia paid to clear joint debt on credit cards and certain taxes she paid on James's 2020 income from contract work. Impliedly, since Katia proposed a 50/50 division of value in the house, Judge Coats found that the house had a market value of $950,000 ($475,000 x 2), which accords with the net valuation in Katia's FL-160 Property Declaration.

Interspousal Transfer Deed (ISTD) on James's behalf transferring the 22 Winship Lane home to her. Her counsel contended that James had been unresponsive to her attorney's requests for his cooperation in signing over the house to her, and that she needed to have the ISTD signed so she could refinance the house and make her first equalizing payment. Counsel served this request on James by mail at the 24 Mariposa Lane address in Orinda; her counsel also emailed him, attaching the supporting papers. The matter came on for hearing remotely, by Zoom, on May 27, 2022.

Alerted to the upcoming ISTD hearing from receipt of the email sent to him by Katia's counsel, James appeared at the hearing remotely, without counsel. At the hearing, Judge Coats observed that James seemed to be agitated, which he denied, stating he was calm. When Judge Coats asked whether he had read the declaration of counsel which was attached to Katia's request for order, he admitted he had not. He explained, "I have been just too busy . . . I've been trying to work" and "I'm not a lawyer" so "I don't know what any of this stuff means." Over James's objection, Judge Coats granted Katia's request, authorizing the clerk to sign the ISTD.

## C.

After retaining counsel in late 2022, James moved to set aside the default judgment on January 23, 2023 by request for order. His set-aside motion was based on Code of Civil Procedure section 580 "and/or" Family Code sections 2121 and 2122. In support of his motion, James submitted a declaration, the highlights of which stated in substance as follows.

During their marriage, James and Katia lived for more than two decades at 22 Winship Lane, a residence that had been gifted to James by his parents in 2012 as his separate property, with no encumbrances. James and Katia were having marital difficulties in 2019. In 2020, at Katia's

8

insistence, James agreed to "add Katia on title as an owner."[7]  According to James, the 22 Winship Lane home was worth "more than $1.6 million" when he added Katia to the title in February 2020.

Shortly before James and Katia separated, James stated he and Katia borrowed $450,000 against the equity value of the Winship Lane house with the intention of improving the house.  According to him, Katia took control of the proceeds of the loan, and shortly after doing so, she decided they should separate, at which point James moved out of the house.

In James's telling, he failed to respond to Katia's petition and to participate in the case because he was "struggling emotionally and financially."  After Katia filed for divorce, he says, "it took many months for me . . . to get back on my feet."  He claimed he "was not focused on the divorce papers" and he did not "recall having received further documents relating to the divorce . . . until May 2022."  He assumed that "if the divorce was going to proceed toward a resolution[,]" "the house would be sold," and "I would be contacted."

After moving out of the 22 Winship Lane home, James said, he began to live in various hotels; out of a vehicle; and with his parents.  He also sometimes stayed at the homes of various friends, including occasionally at a house located at 24 Mariposa Lane.  He did not live at 24 Mariposa Lane, and after receiving personal service of the petition there, he asked Katia not to send mail or direct service on him at that address again.

James claimed to be unaware Katia tried to serve preliminary and final disclosures on him at the 24 Mariposa Lane residence in Orinda.  He

---

[7] The deed, recorded February 18, 2020, reflects a transfer from James, who held title as his separate property, to James and Katia, as their community property with a right of survivorship.

9

took the position that, because he had incomplete information about what was happening in the divorce proceeding, his nonappearance and failure to participate were by mistake. He said that, once he saw Katia's disclosures, he believed they were inadequate in several key respects and that the default judgment went beyond what Katia requested in her petition.

Unaware that a default judgment had been entered against him, James said, he learned of the May 27, 2022 hearing on Katia's ISTD request only after receiving an email sent by Katia's counsel. "Following the hearing," he stated in his declaration, "I was confused about what had just occurred. I felt unheard by the court. I did not believe it was possible for Katia to keep the house since it had been gifted to me by my parents."

Only after meeting with his own counsel, said James, did he "first learn[] and underst[and] that Katia had been awarded the house and that I was supposed to have received a payment of about $500,000 (and other orders)." "These orders were a complete shock to me[,]" he said. James stated he did not recall Katia ever stating she wanted to keep the residence. Nor did James recall Katia ever saying she intended to pay him after she received an inheritance from her mother, who he believed was still alive (which as a practical matter left the due date for the second equalizing payment open-ended).[8]

James stated Katia's failure to inform the family court fully about his acquisition of the 22 Winship Lane house prevented him from seeking reimbursement of his separate property contributions to the house. As for spousal support, James stated Katia had not disclosed that he earned about

---

[8] At the hearing on James's motion to set aside the judgment, Katia's counsel represented that her mother suffers from Alzheimer's disease. There is nothing in the record about Katia's mother's life expectancy.

$50,000 per year, compared to her income of $132,000. Although he disclaimed an interest in spousal support, James stated that, given the income disparity between the two of them, the family court erroneously blocked him from asking for spousal support.

Worse still, according to James, despite having completed the refinancing that she claimed was necessary to make the first equalizing payment to him, by January 2023 Katia had paid him nothing. Because Katia was not required to remove James's name from any of the mortgage loans on 22 Winship Lane, James explained, the practical effect of the default judgment was to allow Katia to retain virtually all of his separate property and community property assets, with no meaningful offsetting obligations to him.

### D.

By the time James filed his motion to set aside the default judgment in January 2023, the case had been reassigned from Judge Coats to Judge Young. Judge Young held two extensive hearings on James's motion, one on April 17, 2023, and another on August 21, 2023.

In argument on the motion, the parties addressed in detail the circumstances of the calendaring of the January 24, 2022 hearing on bifurcation and termination and the informal expansion of the agenda for that hearing to include the default judgment prove-up. Counsel for James suggested that the calendaring error and the ex parte communications preceding the hearing may amount to fraud under Family Code section 2122, subdivision (a), but at the very least would support a finding of mistake under Family Code section 2122, subdivision (e). Judge Young expressed skepticism that there was any fraud, but did state, "Yes, there's definitely a mistake."

11

At the conclusion of the August 21, 2023 hearing, Judge Young issued a tentative ruling indicating her inclination to set aside the default judgment. The tentative ruling explained, in substance, as follows. "The Court finds that there wasn't proper notice and the Court went beyond the petition when . . . the judgment [was granted], because it was all TBD, and [Katia] never got any testimony to something other than TBD. And so, the tentative would be that the only thing that was proper that day was bifurcation of status, and all the rest of the issues need to be set aside and we need to go forward."

On October 31, 2023, after consideration of the parties' supplemental briefing, Judge Young adhered to her tentative ruling, and made the following findings: "1. [James] was not provided 'proper notice' of the proceeding on January 24, 2022. The Request for order served on [James] had an incorrect hearing date and was not served with a copy of the proposed judgment prior to the hearing on January 24, 2022. [¶] 2. The Judgment filed January 28, 2022, included an order concerning the rights and obligations of the parties that went beyond the petition when the court granted judgment, because the petition stated 'TBD' and the court on January 24, 2022 never received testimony as to what 'TBD' actually was." On that basis, Judge Young set aside the default judgment except as to marital status and permitted James to file an answer.

Pressing the matter further, Katia filed an ex parte request for at a statement of decision under Code of Civil Procedure section 632 and Family Code section 2127. On November 14, 2023, the same day the ex parte request was filed, the court denied it, ruling that a statement of decision was unnecessary because its ruling was "one of law and no specific findings and conclusions are necessary." In addition, the court ruled, the request was

12

procedurally defective because Katia failed to specify controverted issues to be decided.

Katia filed a timely appeal from the October 31, 2023 and November 14, 2023 orders.

## II. DISCUSSION

### A.

Katia opens her argument on appeal by emphasizing that James was personally served with her dissolution petition in April 2021, but failed to appear in this case for 16 months despite having been served repeatedly with various disclosures and notices of pending motions. Against that backdrop, she contends that (1) Family Code section 2121 authorizes family courts to grant relief from judgments in divorce actions on six exclusive grounds set forth in section 2122, and James either failed to allege a basis for or was time-barred from seeking relief from the default judgment on any of the specified grounds; (2) Code of Civil Procedure section 580—which Katia contends is "not a Relief from Judgment statute"—does not apply; (3) the family court failed to make any factual findings supporting its vacatur of the default judgment, as it was required to do under Family Code section 2121, subdivision (b), or to issue a statement of decision, as required both by Code of Civil Procedure section 632 and by Family Code section 2127; and (4) having failed to move to set aside the default (as distinguished from the default judgment), James remains in default and any relief granted should have been limited to the holding of a properly noticed default judgment prove-up hearing.

James's principal contention is that the default judgment goes beyond the relief sought in Katia's petition, and as a result, was properly set aside under Code of Civil Procedure section 580, subdivision (a). In response to Katia's argument that section 580 does not apply, James argues that she

13

ignores decades of settled case law to the contrary. He points out that Katia's pro se petition failed to identify any property for division, and that once Katia retained counsel, she purported to serve disclosures that were not only incomplete but were served by mail at an address where he did not live. He also points out that Katia failed to give him any notice of the scheduled prove-up hearing, since the only publicly known date for the hearing was incorrect, the original, incorrect calendar setting having been changed ex parte. Given these notice defects, James argues, the family court lacked fundamental jurisdiction to enter the default judgment on the terms Katia proposed; and by proceeding with the prove-up hearing without notice, the court violated his due process rights.

For reasons set forth more fully below, we agree with James on each of these issues.

**B.**

Under Family Code section 2122, a family court may set aside certain judgments of dissolution on any one of six enumerated grounds, namely, where the judgment was the result of actual fraud (*id.*, subd. (a)), perjury in connection with financial disclosures (*id*, subd. (b)), duress (*id.*, subd. (c)), mental incapacity (*id.*, subd. (d)), mutual or unilateral mistake (in the case of stipulated or uncontested judgments) (*id.*, subd. (e)), or the noncompliance with financial disclosures (*id.*, subd. (f)).[9] In addition to establishing one of

---

[9] The language of Family Code section 2122 states in full as follows: "The grounds and time limits for a motion to set aside a judgment, or any part or parts thereof, are governed by this section and shall be one of the following: [¶] (a) Actual fraud where the defrauded party was kept in ignorance or in some other manner was fraudulently prevented from fully participating in the proceeding. An action or motion based on fraud shall be brought within one year after the date on which the complaining party either did discover, or should have discovered, the fraud. [¶] (b) Perjury. An action

14

these six grounds for relief, the moving party must also establish that "the facts alleged as the grounds for relief materially [would] affect[] the original outcome and that the moving party would materially benefit from the granting of the relief." (Fam. Code, § 2121, subd. (b).) Family Code sections 2121 and 2122 are central to a statutory scheme enacted in 1993 (*id.*, §§ 2100–2129; stats. 1993, ch. 219, § 108, pp. 1615–1617) supplanting traditional equitable set aside law in the context of "judgment[s] . . . adjudicating support or division of property." (Fam. Code, § 2121, subd. (a).)

Many cases stand for the proposition that "[Family Code s]ection 2122 sets out the exclusive grounds and time limits for an action or motion to set aside a marital dissolution judgment." (*In re Marriage of Rosevear* (1998) 65 Cal.App.4th 673, 684 (*Rosevear*); *In re Marriage of Georgiou & Leslie* (2013) 218 Cal.App.4th 561, 571; *In re Marriage of Kieturakis* (2006) 138 Cal.App.4th 56, 87.) But these blanket statements should not be overread. In speaking of "exclusiv[ity]," they simply recognize that, by

---

or motion based on perjury in the preliminary or final declaration of disclosure, the waiver of the final declaration of disclosure, or in the current income and expense statement shall be brought within one year after the date on which the complaining party either did discover, or should have discovered, the perjury. [¶] (c) Duress. An action or motion based upon duress shall be brought within two years after the date of entry of judgment. [¶] (d) Mental incapacity. An action or motion based on mental incapacity shall be brought within two years after the date of entry of judgment. [¶] (e) As to stipulated or uncontested judgments or that part of a judgment stipulated to by the parties, mistake, either mutual or unilateral, whether mistake of law or mistake of fact. An action or motion based on mistake shall be brought within one year after the date of entry of judgment. [¶] (f) Failure to comply with the disclosure requirements of Chapter 9 (commencing with Section 2100). An action or motion based on failure to comply with the disclosure requirements shall be brought within one year after the date on which the complaining party either discovered, or should have discovered, the failure to comply."

15

preempting the traditionally more open-ended equitable grounds for judgment set-aside orders, the Legislature sought to provide greater certainty and enhance the finality of judgments in a certain class of cases by tightening the grounds for vacatur in those cases and establishing clear limitations periods in which such relief may be sought. (Fam. Code, § 2120, subd. (d); *id.*, § 2123; see Hogoboom & King, Cal. Practice Guide: Family Law (The Rutter Group 2025) ¶¶ 16:103–16:104 (Hogoboom & King).)[10]

Obviously, however, the existence of exclusive *statutory* grounds for vacatur in certain cases cannot preclude *constitutional* grounds for the same relief. Code of Civil Procedure section 580, subdivision (a), which applies broadly to all civil judgments, always serves as a constitutional backstop. Under section 580, subdivision (a), no default judgment may grant relief to the plaintiff in excess of that which is demanded in the complaint. (Code Civ. Proc., § 580.)[11] The primary purpose of section 580 is to ensure

---

[10] In addition to specifying particular grounds for relief, this statutory scheme prescribes a set of specific deadlines for seeking vacatur beyond the six-month deadline that normally applies to set-aside motions for civil judgments generally under Code of Civil Procedure section 473. (Fam. Code, § 2122, subds. (a)–(f); see *In re Marriage of Georgiou & Leslie, supra*, 218 Cal.App.4th at p. 571.) " 'Unlike traditional equitable set-aside law where "laches" is the only time limit on relief' " (*ibid.*), the scheme is designed to provide greater certainty that a dissolution judgment is final once the statutorily prescribed deadlines expire. (*Ibid.*)

[11] The language of Code of Civil Procedure section 580, subdivision (a), states in full as follows: "[t]he relief granted to the plaintiff, if there is no answer, cannot exceed that demanded in the complaint, in the statement required by [Code of Civil Procedure] Section 425.11, or in the statement provided for by [Code of Civil Procedure] Section 425.115; but in any other case, the court may grant the plaintiff any relief consistent with the case made by the complaint and embraced within the issue. The court may impose liability, regardless of whether the theory upon which liability is sought to be imposed involves legal or equitable principles."

16

compliance with minimum due process guarantee of notice and opportunity to be heard. (*Greenup v. Rodman* (1986) 42 Cal.3d 822, 826 (*Greenup*) [Code of Civil Procedure section 580 and related statutes requiring specificity in demand for relief sought "aim to ensure that a defendant who declines to contest an action does not thereby subject himself to open-ended liability"]; see *Finney v. Gomez* (2003) 111 Cal.App.4th 527, 535–536.) So that defaulting parties may make an informed decision about whether to appear and defend, section 580, subdivision (a), requires that they be given adequate notice of the maximum judgment that may be assessed against them. (*Greenup,* at pp. 826–827.)

Katia does not address the standards of review that guide our application of the above vacatur principles. We typically give trial courts considerable deference on issues of this sort. When reviewing for abuse of discretion under Family Code sections 2121 and 2122, an appellate court will defer to trial court factual assessments supported by substantial record evidence and will not second-guess a trial court's discretionary choices where those choices are permitted by the governing legal framework. (*Rosevear, supra,* 65 Cal.App.4th at p. 682.) Also, an appellate court will not reverse "in the absence of a clear showing of abuse [of discretion], resulting in injury sufficiently grave as to amount to a manifest miscarriage of justice." (*Ibid.*)

But traditional appellate deference to discretionary trial court decisionmaking must sometimes give way on questions of law. The Code of Civil Procedure section 580 issue presented here brings that exception into play. We will review de novo any trial court determination that a default judgment exceeds the relief sought in the complaint and must therefore be set aside under section 580, subdivision (a), as void. (*Dhawan v. Biring* (2015) 241 Cal.App.4th 963, 968.) To the extent the applicable legal

17

standards under Code of Civil Procedure section 580 turn on a factual assessment of the record, we are dealing with mixed questions of law and fact that are reviewable de novo on appeal. (See *In re Marriage of Terry* (2000) 80 Cal.App.4th 921, 928–929.) Independent review is appropriate, given the constitutional dimensions of what must ultimately be determined under Civil Procedure section 580. (Cf. *Ornelas v. United States* (1996) 517 U.S. 690, 698–699; *People v. Cromer* (2001) 24 Cal.4th 889, 894).

## 1.

Katia's primary argument before us—her contention that Family Code sections 2121 and 2122 govern here exclusively, and that Code of Civil Procedure section 580 has no application—is founded on a false premise: She assumes only one of these two sources of authority may apply. But as James points out, the Family Code itself presupposes that the Code of Civil Procedure applies to family law cases. (Fam. Code, § 210 ["Except to the extent that any other statute or rules adopted by the Judicial Council provide applicable rules, the rules of practice and procedure applicable to civil actions generally, . . . apply to, and constitute the rules of practice and procedure in, proceedings under [the Family Code]."].) Moreover, James tells us, numerous cases (see e.g., *In re Marriage of Eustice* (2015) 242 Cal.App.4th 1291, 1303 (*Eustice*); *Biscaro v. Stern* (2010) 181 Cal.App.4th 702, 711)[12] and recognized authorities on family law practice (Hogoboom & King, *supra,* ¶¶ 3.179, 3.213, 3.257, 3.260.1, 3.276) have long recognized that section 580 applies in dissolution proceedings. We conclude he is right and reject Katia's argument to the contrary.

---

[12] See also *In re Marriage of Boblitt* (2014) 223 Cal.App.4th 1004, 1022; *In re Marriage of Kahn* (2013) 215 Cal.App.4th 1113, 1116 (*Kahn*); *In re Marriage of Rhoades* (1984) 157 Cal.App.3d 169, 172.

18

Factually, James is also correct that the boxes checked in Katia's pro se petition failed to identify any particular assets for division and left everything pertaining to property division open-ended, listing it all as "TBD." Because the default judgment purported to divide assets that had never been identified, we agree that it awarded relief exceeding the relief sought in the petition, justifying a set-aside order under Code of Civil Procedure section 580. (*Eustice*, *supra*, 242 Cal.App.4th at pp. 1303–1304; see *In re Marriage of Lippel* (1990) 51 Cal.3d 1160, 1163, 1166–1167 (*Lippel*) [default judgment ordering child support in dissolution was void where no request for child support was made in the dissolution petition]; *Kahn*, *supra*, 215 Cal.App.4th at p. 1116 [award of $275,000 for breach of fiduciary duty under default judgment in dissolution action voided under Code Civ. Proc., § 580 because dissolution petition did not seek damages for breach of fiduciary duty].)

Without any specifics as to the relief sought, James was put on notice of nothing more than the prospect that a court would dissolve his marriage. Katia's place-holder style petition failed to alert him to the property division issues at stake in the case, depriving him of the information necessary to make an informed decision about whether to appear and defend. We agree that, for Katia to take a default judgment against James on the terms she did without having identified any property for division, violated his due process rights. Even granting that notice in a dissolution action "sufficient to support a default judgment dividing the community's property (including any equalizing payment necessary to achieve an equal division) may be provided by checking the appropriate boxes on a form petition and listing the property to be divided in the petition" (*Van Sickle v. Gilbert* (2011) 196 Cal.App.4th 1495, 1527 (*Van Sickle*)), in this case Katia listed nothing.

19

To be sure, there is case law suggesting that, due to the informal, form-based pleading approach litigants use in marital dissolution cases, the level of pleading specificity required by Code of Civil Procedure section 580 may not be necessary in this context, since all a petitioner seeking a divorce must do is check the appropriate boxes indicating the nature of the relief being sought, regardless of whether specifics are provided. (See *In re Marriage of Andresen* (1994) 28 Cal.App.4th 873, 879) (*Andresen*) [rejecting claim that default judgment in divorce action was void under Code of Civil Procedure section 580 where wife's dissolution petition attached a property declaration listing no values for various items of property and debts to be divided].) Due process is satisfied under *Lippel*, the *Andersen* court held, based on "the petitioner's act of checking the boxes and inserting the information called for on the standard form dissolution petition which correspond or relate to the allegations made and the relief sought." (*Andresen*, at p. 879.)[13]

Arguably under *Andresen*—since family law practice is designed to be friendly to unrepresented litigants—it is enough simply to check the box on an FL-100 standard form petition indicating that property division will be sought, since particulars must always be provided later in the mandatory disclosure process. Here, Katia points out that, in the disclosures she served in November and December 2021, she added significant detail to many of the

_____

[13] *Cf. Sass v. Cohen* (2020) 10 Cal.5th 861, 884 (assuming but not deciding in a non-marital case that *Andresen* was correctly decided.) The holding in *Andresen* does not appear to have been applied outside of the particular "context of [its] facts[,]" where a property declaration that listed for division 10 items of property without assigned values was attached to the dissolution petition. (*In re Marriage of Siegel* (2015) 239 Cal.App.4th 944, 957; *Andresen*, *supra*, 28 Cal.App.4th at p. 879; see *Kahn*, *supra*, 215 Cal.App.4th at p. 1119 ["[i]t would be stretching *Andresen* too far to apply it in this case"].)

"TBD" blanks in her pro se petition. Suffice it to say that, on the record presented, this argument fails because these preliminary disclosures were due within 60 days of the service of Katia's petition (Fam. Code, § 2104, subds. (a), (f)), and when she filed them in December 2021—long after they were due—none of the additional detail the disclosures provided would have reached James before Katia requested entry of his default. Unlike the respondent husband in *Andresen*, James had no basis on which to make an informed decision about whether to appear or take the risk of suffering default (see *Greenup*, *supra*, 42 Cal.3d at p. 826), even assuming he received mailed service at the 24 Mariposa Lane address in Orinda (which he claims never happened).

The form petition Katia used (FL-100) stated that she was requesting property division of "[a]ll such assets and debts are listed . . . as follows (*specify*) . . . ." (Original italics.)[14] But she did not fill out the form correctly. Had she specified the property to be divided, as the form requested, the notice issues that later arose when she sought entry of a default judgment might have been avoided. To support a valid default judgment, Katia's bare-bones pro se petition should have been amended to identify the property subject to division. Once counsel appeared for her in October 2021 and decided to begin the process of seeking a default judgment, it was incumbent on them to file and effect personal service of such an amendment. By failing to do that, they took the risk that any default judgment she later obtained would be void under Code of Civil Procedure section 580 for exceeding the

---

[14] The FL-100 form also gives petitioners the option to attach a Property Declaration listing assets and debts for division. The petitioner in *Andresen* appears to have availed herself of that option by utilizing a version of FL-100 that was in use in the 1980s. (*Andresen*, *supra*, 28 Cal.App.4th at p. 876.)

21

relief her petition sought.[15]  Exercising our independent judgment, we therefore hold that, because the default judgment entered on January 28, 2022 granted relief going beyond the relief sought in Katia's petition, the family court properly set it aside under Code of Civil Procedure section 580, subdivision (a).

**2.**

We think it would raise due process questions to read *Andresen* so broadly as to permit the entry of a default judgment adjudicating property division issues based on a form dissolution petition that does no more than mark "To be determined" next to boxes asking for identification of the property to be divided.  But "[e]ven if we assume that *Andresen* was correctly decided" *(Sass, supra*, 10 Cal.5th at p. 884) and we extend that case to permit the entry of a valid dissolution judgment based on the kind of skeletal petition we have in this case, we need not affirm the family court's vacatur order solely under Code of Civil Procedure section 580, subdivision (a). There is an equally serviceable alternate ground for affirmance of the family court's set-aside order.  To supply authority for the vacatur order at issue here, James relies on Family Code sections 2121 and 2122 as well as Civil Procedure section 580.  He is correct to do so.

Aside from some desultory claims that the family court complied with Code of Civil Procedure section 580 and that James was not entitled to

---

[15] In a "Practice Pointer" counseling "[c]are in preparation," the Hogoboom & King family law treatise puts the point well:  "[T]he allegations made in, and relief requested by, a Judicial Council form petition or response will frame the issues to be adjudicated in the case and define the scope of relief awardable.  Consequently, careless box-checking or completion of blanks may prove costly (necessitating amendments to conform to proof) . . . and, in a default case . . . may render the judgment open to collateral attack." (Hogoboom & King, *supra*, ¶ 3:213, italics omitted.)

22

participate in a prove-up hearing anyway (a secondary line of argument that seems designed to anticipate James taking the position that the default judgment was subject to vacatur under that statute), the primary focus of Katia's briefs on appeal is that the family court's set-aside order can only be affirmed if it finds support in one of the six specified grounds in Family Code section 2122. This argument rests on two principal contentions: (1) James has never alleged and the record does not support the applicability of Family Code section 2122, subdivisions (a), (b), (c) or (d), and Family Code section 2122, subdivision (e), is inapplicable. No discussion is needed of fraud, perjury, duress, mental incapacity, or inadequate disclosure because Family Code section 2122, subdivision (e), which permits vacatur of "uncontested" judgments in dissolution actions on grounds of mistake, plainly applies. Katia's naked assertion that "there was not a stipulated or uncontested judgment in the underlying action" cannot overcome the obvious reality that a default judgment is an "uncontested" judgment.

As a back-up position, Katia makes a series of procedural arguments. She contends that the family court did not make any findings in support of its set-aside order, as it was required to do under Family Code section 2121, subdivision (b) ["before granting relief, the court shall find that the facts alleged as the grounds for relief materially affected the original outcome and that the moving party would materially benefit from the granting of the relief"] and as she specifically asked it to do in making a request for decision under Family Code section 2127 ["if a timely request is made, the court shall render a statement of decision where the court has resolved controverted factual evidence"] and Code of Civil Procedure section 632 ["[t]he court shall issue a statement of decision explaining the factual and legal basis for its

23

decision as to each of the principal controverted issues at trial upon the request of any party appearing at the trial"].

Katia also argues that James's set aside motion was time-barred because he failed to bring it within a year of knowing he had grounds for vacatur, since she served disclosures in the fall of 2022 putting him on notice of the various issues he now seeks to raise. And for good measure, she adds a final contention that, even if James's set-aside motion was timely, the family court erred by allowing him to file a responsive pleading, since he remains in default. Though she stops short of taking this last argument to its logical conclusion, presumably she means that, if we affirm, we should limit the proceedings on remand to a new default prove-up hearing in which James would not be entitled to participate. (See *Devlin v. Kearny Mesa AMC/Jeep/Renault, Inc.* (1984) 155 Cal.App.3d 381, 385–386.)

These various procedural arguments are no more persuasive as a basis for reversal than her principal contention attacking James's set-aside motion as unsupported under Family Code section 2122. Taking Katia's procedural arguments in reverse order, we reject her claim that the court erred in allowing James to file a responsive pleading because he remains in default. Upon determining that a default judgment must be vacated for exceeding the relief demanded in complaint, a family court has discretion to modify the judgment to conform to the pleading, or vacate the underlying default and allow the case to proceed on a contested basis following the filing of the answer to an amended complaint. (See *Kahn*, *supra*, 215 Cal.App.4th at p. 1119; *Van Sickle*, *supra*, 196 Cal.App.4th at pp. 1521–1522.). The latter option would limit the judgment to nothing more than the relief Katia alleges in an amended dissolution petition. On remand, we will direct the family court to follow that option—which was plainly its intent—and allow

24

James to answer an amended petition listing the assets she wishes to have the court divide.

Katia's argument that the family court erred by not issuing a statement of decision and making express findings also lacks merit. Statements of decision are not required under Code Civil Procedure 632 upon the resolution of a motion (*Facebook, Inc. v. Superior Court (Touchstone)* (2020) 10 Cal.5th 329, 358), even where the motion "involve[s] extensive evidentiary hearings and research and arguments by both sides and therefore qualifie[s] as the trial of a question of fact by the court" (*In re Marriage of Simmons* (1975) 49 Cal.App.3d 833, 836). Such statements are generally required, when timely requested, only when there has been a bench trial followed by a judgment. (*Id.* at pp. 836–837; see *In re Marriage of Askmo* (2000) 85 Cal.App.4th 1032, 1040.) To the extent the family court's set-aside order was properly grounded on Code of Civil Procedure section 580, as we have held it was in this case, the request for a statement of decision was also properly rejected because a ruling under section 580 presents a question of law. (*Johnston v. Security Ins. Co.* (1970) 6 Cal.App.3d 839, 844.)

As for the distinct "statement of decision" requirement in Family Code section 2127 and the "findings" requirement in Family Code section 2121, subdivision (b), we see no reversible error there either. The Family Code section 2127 statement of decision requirement is satisfied on this record. The court fully considered all evidence presented to it in support of and in opposition to James's motion to set aside the default judgment; held two extensive hearings on that motion; and issued a reasoned order resolving the motion. At the August 23, 2023 hearing and in its tentative ruling—which it later adopted—the court could not have been more explicit that it found a

25

mistake by James based on lack of notice, which is the ultimate fact needed to set aside a default judgment under section 2122, subdivision (e).[16] Unlike Code of Civil Procedure sections 632 and 634, which, when applicable and properly invoked, require considerable formality and procedural rigor (see *Thompson v. Asimos* (2016) 6 Cal.App.5th 970, 981; Cal. Rules of Court, rule 3.1590(d)–(g)), there are no such requirements for a "statement of decision" under Family Code section 2127.

By contrast to the Code of Civil Procedure section 632 scheme, Family Code 2127 does indeed apply to motions—it is expressly applicable to "actions or *motions* filed under" Chapter 10 of the Family Code (Fam. Code, §§ 2120–2129, italics added), a series of code sections entitled "Relief from Judgment" —but we think it sufficient under Family Code section 2127 that a statement of decision explains the legal grounds for setting aside a judgment and finds the material facts necessary to support a set aside order on those grounds. It is enough that the court expressly state the legal basis for its order of vacatur and indicate how it has resolved any material, factual disputes. No particular form of statement and no particular mode of procedure is necessary. What matters is that the substance of why the court did what it did should be placed on the record. Here, the family court's comments at the August 23, 2023 hearing, in its tentative ruling, and in its set aside order on October 31, 2023, taken collectively, adequately explain

---

[16] Even where a statement of decision is required under Code of Civil Procedure section 632, a court "is required only to state ultimate rather than evidentiary facts. [It] is not required to make findings with regard to detailed evidentiary facts or to make minute findings as to individual items of evidence." (*Nunes Turfgrass, Inc. v. Vaughan-Jacklin Seed Co.* (1988) 200 Cal.App.3d 1518, 1525.)

the legal and factual basis of a set-aside order under Family Code section 2122, subdivision (e).

We also conclude that substantial evidence supports the court's findings of lack of notice and mistake by James. The court clearly believed, and we agree, that the clerical error in setting the original hearing date, together with the later ex parte correction of that date, plus Katia's reliance on mailed service to an incorrect address, deprived James of notice of the financial jeopardy he was in. We gather the court felt, and we think it was justified in seeing things this way, that had James been given proper notice of the stakes involved at the January 24, 2022 hearing—and specifically had he known that ownership of the 22 Winship House might be assigned to Katia without any meaningful equalizing reimbursement—he would have appeared at the hearing and objected, as he attempted to do months later at the May 27, 2022 hearing on the ISTD.

Now, would it have made a difference if James had appeared at the January 24, 2022 hearing? This is one issue that the family court nowhere expressly addressed. We certainly may *infer* that the court likely thought James would achieve a better outcome if his set-aside motion was granted—for the court to vacate the default judgment and allow James to appear and contest Katia's property division demands otherwise made no sense—but Family Code section 2121, subdivision (b), is explicit on this point: "In all proceedings under this chapter, before granting relief, the court shall find that the facts alleged as the grounds for relief materially affected the original outcome and that the moving party would materially benefit from the granting of the relief." There was no such finding, and since there is a statutory directive that a finding be made, we cannot imply the necessary finding on appeal.

27

To the extent the set-aside order at issue here is grounded on Family Code 2122, subdivision (e), the family court erred in failing to make express findings that the grounds for relief it relied on "materially affected the original outcome" and that James was likely to "materially benefit from the granting of relief." But the error was harmless. While it is true that a defendant in default has no *right* to participate in a prove-up hearing, "the entry of default does not entirely render a defaulting defendant persona non grata." (*Siry Investment, L.P. v. Farkhondehpour* (2020) 45 Cal.App.5th 1098, 1129, overruled on other grounds, *Siry Investment, L.P. v. Farkhondehpour* (2022) 13 Cal.5th 333, 346–367.)[17] A defaulted defendant may not be *entitled* to participate in a prove-up hearing as a matter of right, but if he does appear, a trial court is not bound to ignore him. Should a family court decide it is the right thing to do, either in the interests of discharging its statutory obligation to divide assets equally (Fam. Code, § 2550) or for any other reason deemed to be in the interest of substantial justice, nothing precludes the court from hearing him out.

On this record, we believe the family court would have done just that. An objection from James to the form of default judgment Katia proposed, had he found out about it, would likely have had merit.[18] Thus, Katia cannot

---

[17] A defaulted defendant may, for example, bring a motion for a new trial raising " '[e]rror[s] in law' " (*Siry Investment, L.P. v. Farkhondehpour, supra,* 13 Cal.5th at pp. 345–346)*,* and may appeal an award of damages on grounds of excessiveness (*Schroeder v. Auto Driveaway Co.* (1974) 11 Cal.3d 908, 919).

[18] Even assuming that the deed to the Winship Lane home recorded on February 20, 2020 evidenced a presumptively valid transmutation to community property ownership free of undue influence, something which might have been debatable given the timing and other circumstances of the signing of that deed (see *In re Marriage of Wozniak* (2020) 59 Cal.App.5th

show that the court's failure to make express Family Code section 2121, subdivision (b), findings resulted in a miscarriage of justice. (Cal. Const. Art. VI, § 13 [reversal requires appellate court to conclude that "error complained of has resulted in a miscarriage of justice"]; see *Cassim v. Allstate Ins. Co.* (2004) 33 Cal.4th 780, 800–805.) Quite to the contrary, we believe there is a reasonable chance that, if James been given proper notice of the financial jeopardy he was in, (1) he would have appeared and convinced the court not to enter the default judgment on the terms Katia was requesting, and (2) he would have achieved a better outcome by contesting the case, rather than mistakenly failing to appear, expecting that his interests would be adequately protected in absentia. James even claims that, in the circumstances presented, it would have been an abuse of discretion for the court *not* to set aside the default judgment. We do not disagree.

### III. DISPOSITION

The family court's orders of October 31, 2023 and November 14, 2023 are affirmed, and the cause is remanded for further proceedings consistent with this opinion. An order shall issue directing Katia to amend her dissolution petition to identify all assets for division in accordance with the

---

120, 132–134), there was still the issue of whether James was entitled to claim reimbursement for contributing his separate property to the community. (Fam. Code § 2640, subd. (b) ["In the division of the community estate under this division, unless a party has made a written waiver of the right to reimbursement or has signed a writing that has the effect of a waiver, the party shall be reimbursed for the party's contributions to the acquisition of property of the community property estate to the extent the party traces the contributions to a separate property source."].) There may also have been an issue here as to so-called " '*Watts* charges' " payable by Katia to the community for her post-separation exclusive use and possession of the Winship Lane home during the pendency of the dissolution proceedings. (*In re Marriage of Falcone & Fyke* (2012) 203 Cal.App.4th 964, 978.)

29

instructions on the FL-100 form; James shall be permitted to file an answer to the petition as so amended; and the case shall proceed in the normal course from there.  Costs on appeal shall be awarded to James.

                                                          STREETER, J.


WE CONCUR:

BROWN, P. J.
MOORMAN, J.[*]

---

   [*] Judge of the Mendocino Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Trial Court:       Superior Court of California, County of Contra Costa

Trial Judge:       Hon. Ayana K. Young

Counsel:           Oliveri Law and Meghan E. Oliveri for Appellant.

                   Law Office of Stephanie J. Finelli and Stephanie J. Finelli
                        for Respondent.

*In re Marriage of Jenkins* – A169217